UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHARON MCHUGH, et al., | ) | Case No.  1:17CV1413 |
| | ) | |
| | ) | JUDGE SARA LIOI |
| Plaintiffs, | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| TRINITY HEALTH SYSTEM, et al., | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Defendants. | ) | |

This matter was referred to the undersigned on February 14, 2018, for the preparation of this Report and Recommendation regarding the dispositive motions filed by all defendants that have not been dismissed from this case.  ECF Dkt. #69.  Defendant UPMC Presbyterian Shadyside ("Defendant UPMC") and Defendant Center for Emergency Medicine of Western Pennsylvania, Inc. ("Defendant CEMWP"), filed a motion to dismiss on January 5, 2018.  ECF Dkt. #56.  On March 9, 2018, Plaintiff Sharon McHugh ("Plaintiff Sharon McHugh"), Plaintiff Charles W. McHugh ("Plaintiff Charles McHugh"), and Plaintiff Fleet Owners Insurance Fund ("Plaintiff Fleet") (collectively, the "Plaintiffs") voluntarily dismissed without prejudice all claims against Defendant CEMWP.[1]  ECF Dkt. #75.  Also on January 5, 2018, Defendant Medical Mutual of Ohio ("Defendant MMO"), Defendant Trinity Health System ("Defendant Trinity"), and Defendant Multiplan Services Corporation ("Defendant MSC"), each filed a motion to dismiss, and Defendant Medical Mutual Services, LLC ("Defendant MMS"), filed a motion for partial judgment on the pleadings.  ECF DKt. #58; ECF Dkt. #60; ECF Dkt. #61;  ECF Dkt. #59.  On March 9, 2018, Plaintiffs dismissed without prejudice all claims against Defendant MSC.  ECF Dkt. #75.

For the following reasons, the undersigned RECOMMENDS that the Court: GRANT Defendant UPMC's motion to dismiss (ECF Dkt. #56) as it pertains to Defendant UPMC in its entirety and dismiss all of Plaintiffs' claims with prejudice; GRANT Defendant MMO's motion to dismiss (ECF Dkt. #58) in its entirety and dismiss all of Plaintiffs' claims with prejudice; GRANT

---

[1]Plaintiffs' Amended Complaint uses "Fleet" or the "Fund" when referring to Plaintiff Fleet.  The undersigned will refer to this entity as "Plaintiff Fleet" throughout this Report and Recommendation.

Defendant MMS's motion for partial judgment on the pleadings (ECF Dkt. #59) in its entirety and dismiss all of Plaintiffs' state law claims with prejudice; GRANT Defendant Trinity's motion to dismiss (ECF Dkt. #60) in its entirety and dismiss all of Plaintiffs' claims with prejudice; and DENY Defendant MSC's motion to dismiss (ECF Dkt. #61) as moot.

## I.      **FACTUAL HISTORY**

Plaintiff Fleet is a non-profit Taft-Hartley multi-employer health and welfare insurance fund formed by Teamsters Local 964 and participating employers with collective bargaining agreements.[2] ECF Dkt. #48 at 2-3.  Health and welfare plans are offered by Plaintiff Fleet to employees of participating employers, and Plaintiff Fleet is self-funded by employer contributions made on behalf of employees.  *Id.* at 3-4.  The plans offered by Plaintiff Fleet are subject to the requirements of the Employee Retirement Income Security Act ("ERISA") and the Affordable Care Act.  *Id.* at 4. Plaintiff Charles McHugh belongs to a union that collectively bargained on his behalf for a portion of his wages to be contributed to Plaintiff Fleet in exchange for medical coverage under one of its health and welfare plans.  *Id.* at 2-3.  As the wife of Plaintiff Charles McHugh, Plaintiff Sharon McHugh is a covered person under the plan.  *Id.* at 5.

The primary provider network for Plaintiff Sharon McHugh's health plan is the SuperMed network, which is owned and operated by Defendant MMO.  ECF Dkt. #48 at 5.  Plaintiff Fleet chose SuperMed as its provider network, in part, because SuperMed gave Plaintiff Fleet's members and their families access to healthcare providers, such as The Cleveland Clinic and University Hospitals, at discounted prices.  *Id.*  Defendant MMS is the administrator of Plaintiff Fleet's plans and thereby agreed to adjudicate health care claims made against Plaintiff Fleet's members and their families.  *Id.* at 5-6.

Beginning in 1985, Plaintiff Sharon McHugh was under the care of Anthony Curti, M.D., and James A. Fraser, D.D.S., for a lung blood clot and periodontal disease.  ECF Dkt. #48 at 9.  On

---

[2]This factual history is based on the factual allegations contained in Plaintiffs' Amended Complaint as the Court must accept the factual allegations in the Amended Complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Any legal conclusions contained in Plaintiffs' Amended Complaint are not subject to this standard.  *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).

or about February 23, 2016, Dr. Fraser extracted two teeth from Plaintiff Sharon McHugh.  *Id.*  Dr. Fraser extracted two additional teeth from Plaintiff Sharon McHugh on March 14, 2016.  *Id.*  On or about March 17, 2016, Plaintiff Sharon McHugh witnessed her dog fighting with a neighbor's dog.  *Id.* at 10.  While attempting to break up the dog fight, Plaintiff Sharon McHugh's finger was scratched by one of the dogs.  *Id.*

On March 19, 2016, Plaintiff Sharon McHugh presented at an emergency room operated by Defendant Trinity, a healthcare provider not in the SuperMed network.  ECF Dkt. #48 at 10.  Plaintiff Sharon McHugh showed her insurance card, which was accepted by Defendant Trinity.  *Id.*  After one hour of care, Plaintiff Sharon McHugh was transferred via air ambulance to a facility operated by Defendant UPMC, a healthcare provider that was not in the SuperMed network, due to concerns that she had contracted sepsis.  *Id.* at 12.  From the time Plaintiff Sharon McHugh walked into the emergency room operated by Defendant Trinity through her transfer to Defendant UPMC's facility, she was conscious and Plaintiff Charles McHugh was present.  *Id.*  Plaintiff Sharon McHugh was not consulted about the decision to transfer her to Defendant UPMC's facility instead of a healthcare provider in the SuperMed network.  *Id.*

Once she arrived at Defendant UPMC's facility, Plaintiff Sharon McHugh continued to receive treatment for the dog bite.[3]  ECF Dkt. #48 at 14.  After several days of treatment at Defendant UPMC's facility, Plaintiff Sharon McHugh's condition worsened and she nearly died.  *Id.*  During her stay at Defendant UPMC's facility, Plaintiff Sharon McHugh was quarantined due to clostridium difficile ("C. Dif.").  During the next three to four weeks, Plaintiff Sharon McHugh was billed in excess of $1,000,000.00 for her stay at Defendant UPMC's facility.  *Id.*  In April 2016, Plaintiff Sharon McHugh was released from Defendant UPMC's facility.  *Id.*  Within a few weeks Plaintiff Sharon McHugh returned to Defendant UPMC's facility for a number of surgeries and

---

[3]Plaintiffs previously indicated that Plaintiff Sharon McHugh had been scratched while trying to break up the dog fight, however, it appears that "scratched" may have been referring to a dog bite in Paragraph 66 of the Amended Complaint.  *See* ECF Dkt. #48 at 10, 14.

further treatment all related to sepsis and C.Dif.[4]  *Id.* at 15.  As of the filing of the Amended Complaint on November 28, 2017, Defendant MMS has used funds from Plaintiff Fleet in excess of $1,200,000.00 towards Defendant UPMC's bill.  *Id.*  Additionally, Defendant MMS, Defendant MMO, and Defendant UPMC are seeking additional payments from Plaintiffs in excess of $500,000.00.[5]  *Id.*

## II.  **PROCEDURAL HISTORY**

Plaintiffs filed the instant case on July 5, 2017.  ECF Dkt. #1.  An Amended Complaint was filed by Plaintiffs on November 29, 2017.  ECF Dkt. #48.  On January 5, 2018, all defendants that had not been dismissed from this case filed dispositive motions.  Four motions to dismiss were filed by the following parties: Defendant UPMC and Defendant CEMWP (ECF Dkt. #56); Defendant MMO (ECF Dkt. #58); Defendant Trinity (ECF Dkt. #60); and Defendant MSC (ECF Dkt. #61).  Defendant MMS filed a motion for partial judgment on the pleadings (ECF Dkt. #59).  Subsequently, all claims against Defendant CEMWP were dismissed without prejudice, rendering moot any portion of the motion to dismiss filed by Defendant UPMC and Defendant CEMWP as it pertains to Defendant CEMWP.[6]  *See* ECF Dkt. #75.  Likewise, all claims against Defendant MSC were dismissed without prejudice.  *Id.*  Additionally, Plaintiffs dismissed Count IX of the Amended Complaint (hospital malpractice) against Defendant UPMC without prejudice.  *Id.*

In early February 2018, Plaintiffs filed responses in opposition to each dispositive motion, except the motion to dismiss filed by Defendant MSC.[7]  ECF Dkt. #63; ECF Dkt. #64; ECF Dkt.

---

[4]Plaintiffs' Amended Complaint indicates that the additional surgeries and further treatment were "all apparently related to Sepsis and C. Dif."  ECF Dkt. #48 at 15.

[5]Plaintiffs also listed Defendant MSC as one of the parties seeking additional payments in excess of $500,000.00, however, all claims against Defendant MSC have been dismissed.  *See* ECF Dkt. #75.

[6]The motion to dismiss filed by Defendant UPMC and Defendant CEMWP (ECF Dkt. #56) refers to these defendants collectively.  *See* ECF Dkt. #56.  Plaintiffs' response to this motion to dismiss only addresses Defendant UPMC.  *See* ECF Dkt. #66; ECF Dkt. #66-1.  On March 9, 2018, all claims against Defendant CEMWP were dismissed without prejudice.  ECF Dkt. #75.  Accordingly, the Court need not address any arguments raised as to Defendant CEMWP.

[7]As stated above, Plaintiffs voluntarily dismissed all claims against Defendant MSC on March 9, 2018.  ECF Dkt. #75.

#66; ECF Dkt. #67. Each defendant, except Defendant MSC, filed a reply brief in late February 2018.[8] ECF Dkt. #70; ECF Dkt. #71; ECF Dkt. #72; ECF Dkt. #73. This matter was referred to the undersigned on February 14, 2018, for the preparation of a Report and Recommendation regarding the dispositive motions filed by all defendants that have not been dismissed from this case. ECF Dkt. #69.

### III.     STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint.[9] *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls

---

[8]For the purpose of easing the Court's review, all pleadings associated with the dispositve motions will be identified at the beginning of the section dealing with each dispositive motion.

[9]For the purpose of Defendant MMS's motion for partial judgment on the pleadings, filed pursuant to Fed. R. Civ. P. 12(c):

> Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay the trial – a party may move for judgment on the pleadings." A court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard as a motion to dismiss under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  The plaintiff need not set forth "detailed factual allegations," but the pleading standard set forth by the Supreme Court of the United States "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

## IV.  LAW AND ANALYSIS

### A.  Defendant UPMC's Motion to Dismiss (ECF Dkt. #56)

Defendant UPMC and Defendant CEMWP filed a motion to dismiss on January 5, 2018. ECF Dkt. #56.  Plaintiffs filed a response brief in opposition to the motion to dismiss on February 9, 2018.  ECF Dkt. #66.  Defendant UPMC and Defendant CEMWP filed a reply brief on February 23, 2018.  ECF Dkt. #71.  Subsequently, Plaintiffs dismissed Count IX (hospital malpractice) against Defendant UPMC without prejudice and dismissed all claims against Defendant CEMWP without prejudice.  ECF Dkt. #75.  Accordingly, the undersigned will address the arguments contained in the motion to dismiss at hand as pertaining only to Defendant UPMC as no claims remain outstanding against Defendant CEMWP in this case.

#### 1.  ERISA Fiduciary

Defendant UPMC first asserts that it cannot be held liable as a fiduciary pursuant to ERISA. ECF Dkt. #56-1 at 7.  According to Defendant UPMC, it is absurd to allege that the medical-provider defendants in this matter could be ERISA fiduciaries. *Id.*  Defendant UPMC avers that "[a]lthough ERISA has strict fiduciary-duty provisions, those standards apply only when an individual or entity is acting as a fiduciary, defined by 29 U.S.C. § 1002(21)(A)." *Id.* (citing *Deluca v. Blus Cross Blue Shield of Mich.*, 628 F.3d 743, 746 (6th Cir. 2010)).  Continuing, Defendant UPMC quotes the ERISA provision defining a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advise for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Id.* (quoting 29 U.S.C. § 1002(21)(A)). Defendant UPMC states that "ERISA defines a fiduciary in terms of 'control and authority over a plan.'" *Id.* (quoting *Deluca*, 628 F.3d at 747). Quoting the Sixth Circuit in *Deluca*, Defendant UPMC asserts:

> [I]n determining liability for an alleged breach of fiduciary duty in an ERISA case, the courts must examine the conduct at issue to determine whether it constitutes management or administration of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards.

*Id.* (internal citation omitted).

Defendant UPMC asserts that Plaintiffs' Amended Complaint alleges no facts that support a finding that it was a fiduciary under ERISA. ECF Dkt. #56-1 at 8. Continuing, Defendant UPMC claims that a third-party medical provider with no preexisting relationship with Plaintiff Fleet cannot be deemed its fiduciary. *Id.* Defendant UPMC argues that, as an entity that submitted bills for payment under an ERISA plan, it cannot be deemed responsible for issuing benefit determinations regarding those same bills. *Id.* According to Defendant UPMC, Plaintiffs' proposed standard would cause every medical provider to be converted into an ERISA fiduciary. *Id.* Defendant UPMC avers that its business decision was not made for the purpose of administering or managing Plaintiff Fleet's plan, and that if these decisions had any impact on Plaintiff Fleet's plan assets, that alone does not render Defendant UPMC a fiduciary of the plan. *Id.* Additionally, Defendant UPMC states that the "Amended Complaint specifically avers that, pursuant to a contract between [Plaintiff Fleet] and [Defendant MMS], [Defendant MMS] had been vested with discretionary authority over [Plaintiff Fleet's] plan assets and claims administration." *Id.* (citing ECF Dkt. #48 at 5-6). For these reasons, Defendant UPMC asserts that the Court should reject Plaintiffs' attempt to erase the distinction between plan fiduciaries and third-party medical providers, and dismiss Count I (breach of fiduciary duty under ERISA) as it relates to Defendant UPMC. *Id.*

Plaintiffs contend that Defendant UPMC is liable as an ERISA fiduciary.  ECF Dkt. #66-1 at 8.  Specifically, Plaintiffs assert that Defendant UPMC's *de facto* exercise of control of Plaintiff Fleet's funds "by merely sending a claim to [Defendant MMO] renders it [Plaintiff Fleet's] fiduciary under ERISA."  *Id.* at 9.  Plaintiffs state that "[p]ursuant to ERISA, 'an entity that exercises any control or authority over disposition of a plan's assets becomes a fiduciary.'" *Id.* (quoting *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 865 (6th Cir. 2012)) (internal citation omitted).  Continuing, Plaintiffs aver that "[a] fiduciary's obligation can apply to managing, advising, and administering an ERISA plan," and that "ERISA... defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan."  *Id.* (quoting *Pegram v. Herdich*, 530 U.S. 211, 223 (2000); *Mertens v. Hewett Assocs.*, 508 U.S. 248, 262 (1993)).  Plaintiffs assert that this functional definition of ERISA was specifically "intended to be broader" than the purely formalistic common law definition of trustee and does not turn on formal designations.  *Id.* (citing *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999)).  Further, Plaintiffs contend that the determination of fiduciary status under ERISA is particularly fact intensive and thus ordinarily "inappropriate for a motion to dismiss."  *Id.* (quoting *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1030 (S.D. Ohio Mar. 31, 2006)).

Next, Plaintiffs state that "[Defendant UPMC] chose to join the Medical Mutual network and to present its billings against the Plaintiffs through the Medical Mutual network precisely because [Defendant MMO] empowered [Defendant UPMC] with authority over the disposition of [Plaintiff Fleet's] assets."  ECF Dkt. #66-1 at 9.  Plaintiffs assert that Defendant UPMC could have billed Plaintiffs directly, affording Plaintiffs a chance to question the bills before payment.  *Id.* Continuing, Plaintiffs claim that Defendant UPMC "voluntarily joined [Defendant MMO's] network for the purpose of extracting $2.3 million from [Plaintiff Fleet]."  *Id.*  Plaintiffs state that the $2,300,000.00 they allege Defendant UPMC extracted from Plaintiff Fleet was nearly fifty percent of Plaintiff Fleet's total assets in 2016.  *Id.*  Further, Plaintiffs claim that before Plaintiff Fleet's trustees could challenge Defendant UPMC's claims, Defendant UPMC had received $1,300,000.00 of Plaintiff Fleet's funds.  *Id.* at 9-10.

-8-

Plaintiffs' argument is without merit.  As an initial matter, Plaintiffs do not identify any case law extending fiduciary duties under ERISA to third-party medical providers who simply submitted bills for services rendered.  *See* ECF Dkt. #66-1 at 9-10.  29 U.S.C. § 1002(21)(A) states:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advise for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.[10]

Regarding 29 U.S.C. § 1002(21)(A)(i), Defendant UPMC did not exercise discretionary authority or discretionary control respecting management of Plaintiff Fleet's plan or exercises any authority or control respecting management or disposition of its assets.  First, Plaintiffs' claim in the response to Defendant UPMC's motion to dismiss that Defendant UPMC "voluntarily joined [Defendant MMO's] network for the purpose of extracting $2.3 million from [Plaintiff Fleet]" is inconsistent with the facts alleged in the Amended Complaint.  In the Amended Complaint, Plaintiffs state:

> 58.     Upon information and belief, [Defendant UPMC] was not part of the SuperMed network, but was in negotiations with [Defendant MMO] to join the SuperMed network in 2016.

ECF Dkt. #48 at 9.  Plaintiffs' own factual allegations, as stated in the Amended Complaint and accepted as true for the purpose of Defendant UPMC's motion to dismiss, indicate that Defendant UPMC had not joined the SuperMed network at the time Plaintiff Sharon McHugh was treated at Defendant UPMC's facility.  This belies Plaintiffs' claim that Defendant UPMC joined the SuperMed network "precisely because [Defendant MMO] empowered [Defendant UPMC] with authority over the disposition of [Plaintiff Fleet's] assets."  Additionally, Plaintiffs' Amended Complaint includes Defendant UPMC as a party that is seeking additional payments, stating:

> 122.    As of this filing, [Defendant MMS] has used monies from [Plaintiff Fleet] to pay in excess of $1,200,000.00 of the [Defendant UPMC] bill.

---

[10]The term "person" means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization.  29 U.S.C. § 1002(9).  Accordingly, Defendant UPMC meets the definition of "person" since it is a corporation. *See* ECF Dkt. #48 at 3.

> 123.    In addition, [Defendant MMS], [Defendant MMO],[Defendant MSC] and [Defendant UPMC] are pressing for payment of $500,000.00 from the Plaintiffs.

*Id.* at 15.  If Defendant UPMC had discretionary authority or discretionary control managing Plaintiff Fleet's assets, presumably there would not be complications collecting the total amount billed.  Plaintiffs do not explain how Defendant UPMC could have discretionary authority or discretionary control over Plaintiff Fleet's assets, yet could not fully collect on the amounts billed.

As for 29 U.S.C. § 1002(21)(A)(ii), Plaintiffs do not claim that Defendant UPMC rendered investment advice to Plaintiff Fleet or had the authority or responsibility to render such advice.  *See* ECF Dkt. #48 at 15-16.  Regarding 29 U.S.C. § 1002(21)(A)(iii), Defendant UPMC did not have discretionary authority or discretionary responsibility in the administration of Plaintiff Fleet's plan.  Plaintiffs allege no facts in the Amended Complaint that support the contention that Defendant UPMC had discretionary authority or discretionary responsibility in the administration of the plan.  Instead, the Amended Complaint details the medical treatment Plaintiff Sharon McHugh received from Defendant UPMC and the billing related to the treatment and then states:

> 125.    All of the Defendants, including . . . [Defendant UPMC], were fiduciaries pursuant to 29 U.S.C. 1002(21)(A) with respect to [Plaintiff Fleet] because (1) they exercised discretionary authority and control over management of [Plaintiff Fleet's] assets; (2) they exercised authority and control over the disposition of [Plaintiff Fleet's] assets; (3) they had discretionary authority and responsibility in the administration of [Plaintiff Fleet's fund] and they took responsibility for the adjudication of the claims against [Plaintiff Fleet's] assets.

ECF Dkt. #48 at 15-16.  This conclusory statement regarding Defendant UPMC's role in the administration of Plaintiff Fleet's plan is not only a legal conclusion about Defendant UPMC's role as a fiduciary, but is not supported by any facts contained in the Amended Complaint.  *See* ECF Dkt. #48 at 14-15.  Further, Plaintiff Fleet does not attempt to explain why it believes Defendant UPMC had any role in the administration of its plan or the adjudication of claims against its assets.  *See* ECF Dkt. #66-1 at 9-10.

Additionally, while the undersigned recognizes that the definition of fiduciary is intended to be broader than the common law definition and does not turn on formal designations, Plaintiffs' position extends this broadness beyond the intentions of ERISA.  *See Smith*, 170 F.3d at 613.  Based

-10-

on the factual allegations contained in the Amended Complaint, Plaintiff Sharon McHugh was treated at Defendant UPMC's facility where she nearly died, and was released to her home but subsequently returned to the facility for a number of surgeries and further treatment.[11]  ECF Dkt. #48 at 14-15.  Plaintiffs were then billed for the treatment and have paid some portion of the billed amount to Defendant UPMC.[12]  *Id.* at 15.  Defendant UPMC is a medical provider that had no relationship with Plaintiffs prior to Plaintiff Sharon McHugh arriving at its facility for treatment. Plaintiffs' position, namely, that Defendant UPMC should be considered a fiduciary under ERISA, is overly broad and would essentially convert healthcare providers into ERISA fiduciaries whenever transacting with an ERISA fund.  For these reasons, the undersigned recommends that the Court find that Defendant UPMC is not a fiduciary pursuant to ERISA and dismiss Count I (breach of fiduciary duty under ERISA) of Plaintiffs' Amended Complaint as it pertains to Defendant UPMC with prejudice.

### 2.    ERISA Preemption

Defendant UPMC also asserts that Plaintiffs' state law claims are preempted by ERISA.[13] ECF Dkt. #56-1 at 9.  Specifically, Defendant UPMC avers that Plaintiffs' state law claims seek a refund for amounts paid, a benefit covered by an ERISA plan, which is duplicative of the ERISA claims against the ERISA fiduciaries - Defendant MMO, Defendant MMS, and Defendant MSC.[14] *Id.*  Defendant UPMC asserts that ERISA's expansive preemption provision is interpreted broadly

---

[11]Plaintiffs allege Plaintiff Sharon McHugh had not fully recovered at the time she was released from Defendant UPMC's facility.  ECF Dkt. #48 at 14.  This allegation is not material to the determination of whether Defendant UPMC is a fiduciary under ERISA.

[12]While Plaintiffs may dispute the amount Defendant UPMC billed and some of its treatment choices, these disputes are not material to the determination of whether Defendant UPMC is a fiduciary of Plaintiff Fleet pursuant to ERISA.  *See* ECF Dkt. #48 at 16-17.

[13]Plaintiffs' outstanding state law claims against Defendant UPMC are: breach of common law fiduciary duty (Count III); negligent misrepresentation (Count VI); fraud (Count VII); unjust enrichment (Count VIII); and negligence (Count X).  ECF Dkt. #48.  The hospital malpractice claim (Count IX) was dismissed without prejudice by Plaintiffs.  ECF Dkt. #75.  The Sixth Circuit has held that it is the nature of the claim that determines whether ERISA applies, not whether the claim will succeed.  *See Smith*, 170 F.3d at 613; *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995).

[14]All claims against Defendant MSC have been dismissed without prejudice.  ECF Dkt. #75.

and that ERISA preemption is not limited to laws affecting employee benefit plans but extends to any state cause of action that has a connection or reference to an ERISA plan. *Id.* (citing *Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987)). Next, Defendant UPMC cites 29 U.S.C. § 1144 for the proposition that the ERISA remedial scheme "shall supersede any and all State laws insofar as they may now or hereinafter relate to any employee benefit plan" covered by the statute. *Id.* Defendant UPMC asserts that claims will be preempted where they "merely attach new, state-law labels to the ERISA claims for breach of fiduciary duty and recovery of benefits, for the apparent purpose of obtaining remedies that Congress has chosen not to make available under ERISA." *Id.* (quoting *Smith*, 170 F.3d at 615). Continuing, Defendant UPMC states:

> It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit. Even claims brought under state-law doctrines that do not explicitly refer to employee benefit plans are preempted when the claims arise from the administration of such plans whether directly or indirectly.

*Id.* (quoting *Smith*, 170 F.3d at 615; *Gibson v. Prudential Ins. Co.*, 915 F.2d 414, 416 (9th Cir. 1990)).

Next, Defendant UPMC asserts that Plaintiffs' state law claims are merely a reassertion of their ERISA claims, and that whether Plaintiffs allege either that the healthcare providers charged too much or that the fiduciaries paid too much, all the state law claims are asserting a claim for ERISA benefits in the form of a refund of a plan benefit paid to Plaintiff Sharon McHugh's healthcare providers. ECF Dkt. #56-1 at 10. Defendant UPMC avers that the applicability of ERISA preclusion is apparent by reference to the publically available "Summary Plan Description" for Plaintiff Fleet that sets forth the procedures for obtaining a refund for overbilled payments. *Id.* Continuing, Defendant UPMC points to a section of the document titled "Right to Recovery" that states:

> **Right to Recovery.** This plan may pay benefits that should be paid by another benefit plan. In this case, this Plan may recover the amount paid from the other benefit plan or the Member. That repayment will count as valid payment under the other benefit plan.

-12-

> Further, this Plan may pay benefits that are later found to be greater than the allowable charge. In this case, this Plan may recover the amount of the overpayment from the sources to which it was paid.

*Id.* (citing ECF Dkt. #56-3 at 21). According to Defendant UPMC, the right to recovery is directly addressed in Plaintiff Fleet's plan document and the plan also provides that it "shall pay reasonable and customary charges, when medically necessary, incurred by a Member of Dependent for medical services." *Id.* (citing ECF Dkt. #56-3 at 13). Defendant UPMC asserts that Plaintiffs' essential claim against it is that Plaintiff Sharon McHugh's medical charges were not reasonable or customary, and therefore it is clear that Plaintiffs are attempting to recover a plan benefit pursuant to a theory of recovery covered by plan documents. *Id.*

Continuing, Defendant UPMC avers that Plaintiffs' state law claims are "hopelessly linked to the Plan documents." ECF Dkt. #56-1 at 10 (citing *Lion's Volunteer Blind Indus. v. Automated Grp. Admin., Inc.*, 195 F.3d 803, 809 (6th Cir. 1999); *Ky. Laborers Dist. Council Health & Welfare Fund v. Hope*, 861 F.2d 1003, 1005 (6th Cir. 1988); *Little v. UNUM Provident Corp.*, 196 F. Supp. 2d 659, 671 (S.D. Ohio May 1, 2002)). Defendant UPMC asserts that the instant case is a textbook case of ERISA preemption since Plaintiffs' state law claims are inextricably connected to the ERISA plan and seek to recover payments arising out of the actions of the plan fiduciaries.

Plaintiffs contend that ERISA does not preempt their state law claims. ECF Dkt. #66-1 at 10. Continuing, Plaintiffs assert that the question of whether a state law is related to an employee benefit plan requires a pragmatic approach starting from the "presumption that Congress does not intend to supplant state law." *Id.* (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). Plaintiffs state that ERISA does not preempt claims against parties that have wrongfully or fraudulently obtained money from a plan even when the entire dispute occurred within the context of a plan, and that a medical provider's obligation not to submit false and misleading claims is not dependent on ERISA plans but arises separately and independently from any contractual duties prescribed by ERISA. *Id.* (citing *Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 769-75 (7th Cir. 2002); *Aetna Health, Inc. v. Health Goals and Chiropractic Ctr., Inc.,* No. 10-5216, 2011 WL 1343047, at *6 (D.N.J. Apr. 7, 2011)). Next,

-13-

Plaintiffs state that the Sixth Circuit has identified the following three types of claims preempted by ERISA:

> ERISA preempts state laws that (1) mandate employee benefit structures or their administration; (2) provide alternative enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.

*Id.* at 11 (quoting *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir 2005) ("*PONI*") (internal citation omitted)).  Finally, Plaintiffs claims that their state law claims do not fall into any of the *PONI* categories and that the claims are related to Defendant UPMC's abuse of duties that it owed Plaintiffs under common law.  *Id.*

In the instant case, Plaintiffs' state-law claims are preempted by ERISA.  Common law causes of action that "relate to" an employee benefit plan fall under ERISA's preemption clause.[15] *Pilot Life Ins.*, 481 U.S. at 47.  The Supreme Court of the United States has recognized the expansive sweep of ERISA's preemption clause, explaining that the phrase "relate to" was assigned its broad common-sense meaning and that a state law "relate[s] to" a benefit plan in the normal sense of the phrase if it has a connection with or reference to such a plan.  *Id.*  Additionally, the Supreme Court of the United States has emphasized that the preemption clause is not limited to state laws specifically designed to affect employee benefit plans.  *Id.* (internal citation omitted).  Further, the Sixth Circuit has explained that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA."  *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991).

In the response to Defendant UPMC's motion to dismiss, Plaintiffs rely on *PONI* to identify the three types of claims preempted by ERISA as established by the Sixth Circuit.  ECF Dkt. #66-1 at 11.  In *PONI*, the Sixth Circuit cites *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 698 (4th Cir. 1996), when stating that "ERISA preempts state laws that . . . provide 'alternative enforcement mechanisms.'"  In *Coyne*, the Fourth Circuit explained:

---

[15]Plaintiffs do not assert that their state law claims are subject to a statutory exemption.  *See* ECF Dkt. #66-1 at 10-11; 29 U.S.C. § 1144.

-14-

> Third, in keeping with the purpose of ERISA's preemption clause, Congress intended to preempt state laws providing alternative enforcement mechanisms for employees to obtain ERISA benefits. Thus, the Court held in *Pilot Life Inc. Co. v. Dedeaux* . . . that the common law causes of action raised in the beneficiary's complaint, each based on an alleged improper processing of claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 1144(a).

98 F.3d 1457 at 1468-69 (internal citations omitted).  Returning to *PONI*, the Sixth Circuit stated,

"[a] suit against a non-fiduciary to recover plan benefits seeks to create an alternative to ERISA's

enforcement mechanism, and accordingly is preempted under § 514(a)."  399 F.3d at 702.

Plaintiffs' state law claims relate to an employee benefit plan and therefore fall under

ERISA's preemption clause.  The "Summary Plan Description For Qualified Members and

Dependents for [Plaintiff Fleet]" includes the following language:

> **ESSENTIAL HEALTH BENEFITS**
>
> Medically Necessary charges for Essential Health Benefits will be paid by the Fund for Members and Dependents as provided in the Schedule of Benefits for each plan.
>
> The plan shall pay reasonable and customary charges, when medically necessary, incurred by a Member or Dependent for medical services, supplies and treatment performed by a physician, or charges for rental of braces, crutches, wheelchairs, hospital-type beds and such durable medical equipment as may be approved by the fund.  Purchase of such articles will be approved only if deemed by the Fund to be more economical than rental.
>
> [and]
>
> **Right to Recovery.**  This plan may pay benefits that should be paid by another benefit plan.  In this case, this Plan may recover the amount paid from the other benefit plan or the Member.  That repayment will count as valid payment under the other benefit plan.
>
> Further, this Plan may pay benefits that are later found to be greater than the allowable charge.  In this case, this Plan may recover the amount of the overpayment from the sources to which it was paid.

ECF Dkt. #56-3 at 13, 21.  In the Amended Complaint, Plaintiffs allege, in part, the following:

> [Count III - Breach of Common Law Fiduciary Duty]
>
> 154.  The exorbitant prices charged by [Defendant UPMC] above usual and customary, above negotiated and above Medicare prices were a breach of [Defendant UPMC's] fiduciary duty to the Plaintiffs.
>
> [Count VI - Negligent Misrepresentation]
>
> 177.  [Defendant Trinity], STAT Medevac, and [Defendant UPMC] respectively made material misrepresentations when they submitted false and misleading

-15-

bills for reimbursement of charges that were substantially in excess of the usual, customary, and reasonable charges for the same or similar medical services in the relevant market.

[Count VII - Fraud]

185.    [Defendant Trinity], STAT Medivac, and [Defendant UPMC] jointly and severally submitted false and misleading claims for the purpose of taking monies from the Plaintiffs to which they were not entitled, which included amounts that they knew were substantially in excess of the usual, customary, and reasonable charges for such services.

[Count VIII - Unjust Enrichment]

192.    [Defendant Trinity], STAT Medivac, [Defendant CEMWP], and [Defendant UPMC] respectively billed for services in an amount greatly in excess of the usual and reasonable billed charges for the same services in the relevant market.

[Count X- Negligence]

208.    Each of the Defendants owed each of the Plaintiffs duties of care, including, but not limited to only charging Plaintiffs for medically necessary services.

210.    As detailed above each Defendant has breached its duty of care by charging services that were not medically necessary or participated in a scheme or knowingly facilitated the charging of such services.

ECF Dkt. #48 at 20-26.

Plaintiffs' state law claims against Defendant UPMC relate to Plaintiff Fleet's employee benefits plan and are thus preempted by ERISA. *See Cromwell*, 944 F.2d at 1276. Each of Plaintiffs' state law claims against Defendant UPMC asserts that Defendant UPMC billed for services beyond what is usual, reasonable, and/or customary, or some combination of these terms, or services that were not medically necessary. *See* ECF Dkt. #48 at 120-26. The plan documents, as quoted above, indicate that "[t]he plan shall pay reasonable and customary charges, when medically necessary" and "this Plan may pay benefits that are later found to be greater than the allowable charge." ECF Dkt. #56-3 at 13, 21. Each of Plaintiffs' state law claims against Defendant UPMC invokes determinations directly addressed in Plaintiff Fleet's plan documents and thus relate to Plaintiff Fleet's employee benefit plan. The state law claims asserted by Plaintiffs have a connection with or reference to Plaintiff Fleet's employee benefit plan and are thus preempted by ERISA. For these reasons, the undersigned recommends that the Court dismiss Count III (breach of common law fiduciary duty), Count VI (negligent misrepresentation), Count VII (fraud), Count

-16-

VIII (unjust enrichment), and Count X (negligence) of Plaintiffs' Amended Complaint as they pertain to Defendant UPMC with prejudice.

### B.    Defendant MMO's Motion to Dismiss (ECF Dkt. #58)

Defendant MMO filed a motion to dismiss on January 5, 2018.  ECF Dkt. #58.  Plaintiffs filed a response brief in opposition to the motion to dismiss on February 8, 2018.  ECF DKt. #64. Defendant MMO filed a reply brief on February 23, 2018.  ECF Dkt. #73.

### 1.    ERISA Fiduciary

Defendant MMO first asserts that it is not a fiduciary under ERISA.  ECF Dkt. #58-1 at 7. Continuing, Defendant MMO cites the Sixth Circuit for the proposition that:

> A fiduciary is defined by ERISA to include a corporation who exercises any discretionary authority or discretionary control respecting management of a plan or has discretionary authority or discretionary responsibility in the administration of such plan.  In determining whether a corporation is a fiduciary, rather than looking to the formal title, we use a functional approach, looking to whether it acts in a fiduciary capacity with respect to the conduct at issue . . . . [P]urely ministerial functions such as processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits are not fiduciary functions.

*Id.* at 8 (quoting *Deschamps v. Bridgestone Ams., Inc.*, 840 F.3d 267, 277 (6th Cir. 2016) (internal citations omitted)).  Defendant MMO avers that an entity that does not control or influence the decision to deny benefits is not the fiduciary with respect to the denial of said benefits, and the correct inquiry in this case is whether Defendant MMO was acting as fiduciary when taking the actions subject to the Amended Complaint.  *Id.* (citing *Moore v. Lafayetter Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006); *Culturona v. Nationwide Life Ins. Co.*, 936 F. Supp. 2d 832, 857 (N.D. Ohio Mar. 26, 2013)).

Next, Defendant MMO states that the Plaintiff Fleet's agreement with Defendant MMS regarding claims administration (referred to by Defendant MMO as the "TPA Agreement") sets forth the fiduciary relationship and duties that Defendant MMS would undertake in the course of performing claims administration services.[16]  ECF Dkt. #58-1 at 9.  Defendant MMO asserts that the

---

[16]Plaintiff Fleet's agreement with Defendant MMS regarding claims administration is referred to herein as the "TPA Agreement" for consistency with Defendant MMO's motion to dismiss and the referred motions filed by the other defendants.

TPA Agreement expressly provides that the fiduciary duties were all owed and performed by Defendant MMS, rather then Defendant MMO, and thus to the extent any fiduciary duty arises under the TPA Agreement, that duty lies with MMS. *Id.*

Continuing, Defendant MMO asserts that Plaintiffs' Amended Complaint fails to allege facts supporting the contention that Defendant MMO had control over Plaintiff Fleet's assets through its creation and maintenance of the SuperMed network. ECF Dkt. #58-1 at 10. Instead, according to Defendant MMO, Plaintiff Fleet retained ultimate control over the plan's assets and made the final decision as to whether to pay a claim, and Defendant MMS had the authority to administer claims on behalf of the plan. *Id.* (citing ECF Dkt. #58-2 at 4). Defendant MMO states:

> [T]he TPA Agreement makes it clear that the provider negotiations, provider network development, and provider contracting that [Defendant MMO], as an affiliated company of [Defendant MMS], undertakes on behalf of [Defendant MMS] is not a plan function, nor undertaken on behalf of [Plaintiff Fleet] as the Plan Sponsor. The TPA Agreement is express and clear on this point: [Defendant MMS], not [Defendant MMO], is solely responsible for claims administration and [Defendant MMO] is not acting as a fiduciary of the Plan or [Plaintiff Fleet] when negotiating provider contracts and network agreements.

*Id.* at 11. On this basis, Defendant MMO claims that Plaintiffs cannot escape the fact that Defendant MMO, as the creator or the SuperMed network, did not undertake and fiduciary duties  and does not have control or authority over plan assets. *Id.*

Additionally, Defendant MMO asserts that network contract negotiations and operations are not fiduciary duties as a matter of law. ECF Dkt. #58-1 at 12. Defendant MMO states:

> In determining liability for an alleged breach of fiduciary duty in an ERISA case, the courts must examine the conduct at issue to determine whether it constitutes management or administration of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards.

*Id.* (quoting *Deluca*, 628 F.3d at 747 (internal citation omitted)). Continuing, Defendant MMO avers that, as a matter of law, it does not owe Plaintiff Fleet any fiduciary duty with respect to the negotiation of provider contracts, rates, or networks. *Id.* (citing *Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*, No. 16-cv-10317, 2017 WL 3007074 (E.D. Mich. July 14, 2017), *appeal pending*). Defendant MMO claims that all of Plaintiffs' claims relate to its non-fiduciary role in negotiating and developing provider networks in which Plaintiff Fleet participated

-18-

and transmitted claims made by providers to Defendant MMS for administration and payment. *Id.* at 12-13.

Plaintiffs contend that the TPA Agreement is not dispositive of Defendant MMO's status as a fiduciary because ERISA requires a functional test to determine whether an entity is a fiduciary. ECF Dkt. #64-1 at 6 (citing *Mertens*, 508 U.S. at 262). Continuing, Plaintiffs assert that the functional definition of fiduciary under ERISA was intended to be broader than the purely formalistic common law definition of trustee and, unlike the common law of trusts, the definition of fiduciary under ERISA does not turn on formalistic designation. *Id.* (citing *Smith*, 170 F.3d at 613).

Next, Plaintiffs claims that "[Defendant MMS] is clearly [Defendant MMO's] alter ego." ECF Dkt. 64-1 at 7. Plaintiffs cite *Trustees of the Detroit Carpenters Fringe Benefits Funds v. Industrial Contracting, LLC,* 581 F.3d 313, 319 (6th Cir. 2009), for the following proposition:

> The Sixth Circuit test for determining whether two companies are alter egos . . . is whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision, and ownership.

*Id.* (internal citation omitted). Continuing, Plaintiffs state that pursuant to intra-company contracts common management, and network procedures, Defendant MMO is in complete control of Defendant MMS and the latter has no independence from the former. *Id.* at 7-8. Plaintiffs aver that the representatives of Defendant MMS are officers and employees of Defendant MMO, and Defendant MMO issued insurance cards to Plaintiff Fleet's members indicating that "Medical Mutual" was the insurance provider and "SuperMed PPO" was the network. *Id.* (citing ECF Dkt. #64-2 at 3). More importantly, according to Plaintiffs, Defendant MMO's actions demonstrate that it exercised discretion and control in the management and disposition of Plaintiff Fleet's assets. *Id.* at 8. Specifically, Plaintiffs assert:

> Despite the text of the TPA Agreement, in practice, [Defendant MMO's] actual functions create the fiduciary relationship. On a weekly basis, [Defendant MMO] dips directly into [Plaintiff Fleet's] assets with invoices that [Plaintiff Fleet] must pay within two business days, without any supporting documentation. Because ERISA's fiduciary inquiry considers a party's actions and the effect of those actions, it is irrelevant whether or not a formal contract exists between [Defendant MMO] and

-19-

[Plaintiff Fleet], and whether or not a formal contract purports to eliminate fiduciary duties.

*Id.*

Further, Plaintiffs assert that Defendant MMO exercised extensive control over Plaintiff Fleet's assets through the SuperMed network.  ECF Dkt. #64-1 at 8.  According to Plaintiffs, Plaintiff Fleet makes weekly payments for medical claims to Defendant MMO after the medical providers bill Defendant MMO and Defendant MMO re-bills Plaintiff Fleet.  *Id.*  Plaintiffs state that the bills sent to Plaintiff Fleet are for claims Defendant MMO has already paid and instruct Plaintiff Fleet to pay within two business day without offering any information about the individual claims. *Id.*  Continuing, Plaintiffs state that the bills sent to Plaintiff Fleet are for a lump sum of all claims that Defendant MMO decided to pay for that billing cycle, and that failure to pay each bill within two business days may result in a loss of coverage of all of Plaintiff Fleet's members and their families.  *Id.*  Plaintiffs state that Plaintiff Fleet had no option but to rely on Defendant MMO's statements, and by having the authority to invoice Plaintiff Fleet, Defendant MMO also had the authority to subtract the invoiced amount from Plaintiff Fleet's fund.  *Id.* at 9.

Next, Plaintiffs claims that Defendant MMO's actions with respect to Plaintiff Fleet create a fiduciary relationship.  ECF Dkt. #64-1 at 9.  Specifically, Plaintiffs claim that Plaintiff Fleet does not have an opportunity to review claims before Defendant MMO pays them on Plaintiff Fleet's behalf since Plaintiff Fleet must pay Defendant MMO within two business days and without supporting documentation.  *Id.* at 9-10.  According to Plaintiffs, Defendant MMO is thereby tasked with exercising its own discretion when deciding to pay medical claims with Plaintiff Fleet's funds and is thus a fiduciary under ERISA.  *Id.*

Plaintiffs have failed to show that Defendant MMO is a fiduciary under ERISA.  In the Amended Complaint, Plaintiffs allege the following facts regarding Defendant MMO's conduct, or conduct relevant to Defendant MMO's processing of medical claims:

> 21.    The primary provider network for [Plaintiff Sharon McHugh's] health plan is SuperMed, which [Defendant MMO] operated.
>
> 26.    Pursuant to the contract between [Plaintiff Fleet] and [Defendant MMS], [Defendant MMS] is the administrator of providers' claims for payment by [Plaintiff Fleet].  Pursuant to that contract, [Defendant MMS] agreed to

administer [Plaintiff Fleet's] Plans by adjudicating health care claims made against Members and the Member families of [Plaintiff Fleet].

29.   In its fiduciary capacity, [Defendant MMS] has processed claims and addressed appeals on behalf of [Plaintiff Fleet's] Plans.

33.   The contract [between Plaintiff Fleet and Defendant MMS] also obligates [Defendant MMS] to closely review and analyze larger claims and notify [Plaintiff Fleet's] trustees before demand for payment.

36.   [Defendant MMO] owns and operates the SuperMed network as its premier medical provider network in Ohio.

37.   [Defendant MMO] through it SuperMed payment procedures and its control of [Defendant MMS] exercises authority and/or control over the assets of the fund.

121.   Upon information and belief, neither [Defendant MSC] nor PHCS nor [Defendant MMO] nor [Defendant MMS] challenged the [Defendant UPMC] bill.

122.   As of this filing, [Defendant MMS] has used monies from [Plaintiff Fleet] to pay in excess of $1,200,000.00 of the [Defendant UPMC] bill.

123.   In addition, [Defendant MMS], [Defendant MMO], [Defendant MSC] and/or PHCS and [Defendant UPMC] are pressing for payment of an amount in excess of $500,000.00 from the Plaintiffs.[17]

ECF Dkt. #48 at 5-6, 15. In the response to Defendant MMO's motion to dismiss, Plaintiffs assert:

[Defendant MMO] owns and runs the SuperMed network. When [Defendant MMO/Defendant MMS] presents itself to the public, it presents itself simply as "Medical Mutual." [Defendant MMO] directly invoices [Plaintiff Fleet] for its members' medical claims. [Plaintiff Fleet] makes weekly payments for these medical claims to [Defendant MMO]. The medical providers bill [Defendant MMO], and [Defendant MMO] re-bills [Plaintiff Fleet]. [Defendant MMO's] bills are for claims that [Defendant MMO] already paid. These bills to [Plaintiff Fleet] instruct [Plaintiff Fleet] to pay "within two business days," and do not offer any information about the individual claims. Rather, the bills are for a lump sum of all of the claims that [Defendant MMO] had decided to pay for that billing cycle. If [Plaintiff Fleet] does not pay [Defendant MMO's] invoices in the two business days for any reason, [Plaintiff Fleet's] more than 800 member-families may lose medical coverage . . . . [Plaintiff Fleet] had no alternative but to rely on Defendant MMO's statements. Once [Defendant MMO] sent its invoice, [Plaintiff Fleet] had no choice but to pay the stated amount; otherwise it risked all of its members' medical coverage. Thus, by

---

[17]The undersigned has omitted the paragraphs of the Amended Complaint regarding Defendant MMO's conduct, or conduct relevant to Defendant MMO's processing of medical claims that are conclusions of law as such conclusions need not be accepted by the Court since the presumption of truth regarding the factual allegations is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. The undersigned notes that Paragraph 37 of the Amended Complaint may include a conclusory statement as it states that Defendant MMO controlled Defendant MMS to exercise authority and/or control over the assets of the fund, however, this Paragraph was included as it is central to Plaintiffs' claims against Defendant MMO.

having the authority to invoice [Plaintiff Fleet], [Defendant MMO] also has the authority to subtract the invoiced amount from [Plaintiff Fleet's] fund.[18]

ECF Dkt. #64-1 at 8.  Plaintiffs may not amend their Amended Complaint through their response to Defendant MMO's motion to dismiss.  *Brown v. Whirlpool Copr.*, 996 F. Supp. 2d 623, 645 (N.D. Ohio Feb. 10, 2014) (quoting *Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, n. 2 (N.D. Ohio Nov. 22, 2013) ("However, the complaint contains no such allegation, and it is hornbook law that 'a complaint cannot be amended by briefs in opposition to a motion to dismiss'") (internal citation omitted)).  Accordingly, the undersigned disregards all new factual allegations made in Plaintiffs' response to Defendant MMO's motion to dismiss.

Based on the Amended Complaint, Plaintiffs appear to allege that Defendant MMO is a fiduciary because it had control over Plaintiff Fleet's assets through Defendant MMO's ownership and operation of the SuperMed network.  Despite Plaintiffs' position to the contrary, the TPA Agreement shows that the establishment of networks and provider relationships were not taken on behalf of Plaintiff Fleet.  Section 5.6 of the TPA Agreement states:

Section 5.6    Provider Agreements

[Defendant MMS], through an affiliated company, negotiates agreements with providers and networks.  These negotiations are undertaken on behalf of [Defendant MMS], and not on behalf of [Plaintiff Fleet].  These negotiations and agreements are not a function [Defendant MMS] has undertaken or will undertake pursuant to [the TPA Agreement] and [Defendant MMS] and [Plaintiff Fleet] acknowledge that neither [Defendant MMS] nor its affiliates are fiduciaries when performing this function.

[Defendant MMS] has and retains the sole right to choose which Providers or networks it will contract with, and on what terms and to amend and terminate those agreements. [Defendant MMS] has and retains the sole right to designate Providers as contracting and/or network.[19]

ECF Dkt. #58-2 at 10.   Further, the TPA Agreement speaks to the party with the final decision about whether to pay a claim.  Section 5.7 of the TPA states:

---

[18]Plaintiffs do not cite any source for their explanation of payments to Defendant MMO.  It appears that Plaintiffs are relying on Section 2(A) of Addendum I to the TPA Agreement.  *See* ECF Dkt. #58-2 at 42.  While some of Plaintiffs assertions, as cited above, in the response to Defendant MMO's motion to dismiss are supported by the Amended Complaint, others remain as first raised in the response.

[19]Defendant MMO is the "affiliated company" mentioned in Section 5.6 of the TPA Agreement.  *See* ECF Dkt. #58-1 at 5; ECF Dkt. #58-2 at 10.

> [Plaintiff Fleet] shall have the exclusive right to interpret the terms of the [b]enefit [b]ook(s) and any [a]mendments.  The decision about whether to pay any claim, in whole or in part, is within the sole discretion of [Plaintiff Fleet] and such decision shall be final and conclusive, subject to any appeals process as outlined in the [b]enefit [b]ook(s). [Defendant MMS] and [Plaintiff Fleet] further agree that it is the intention of [Defendant MMS] and [Plaintiff Fleet] that [Plaintiff Fleet's] decision to grant or deny any benefit shall be given judicial deference in any suit for review or such grant or denial of any benefit.

ECF Dkt. #58-2 at 10.  The TPA Agreement specifically states that Plaintiff Fleet retains ultimate control over the decision whether to pay a claim.  Additionally, the TPA Agreement does not indicate that MMO had the authority to administer claims, or manage or control plan assets.

In the instant case, and based on the Amended Complaint, Defendant MMO owns and operates the SuperMed network, has some degree of control over Defendant MMS, and transmits claims for payment.  ECF Dkt. #48 at 5-7, 15.  Plaintiffs claim that Defendant MMO exercised authority and/or control over [Plaintiff Fleet's] assets through the SuperMed network and its control over Defendant MMS.  *Id.* at 6-7.  Despite Plaintiffs' assertion, Defendant MMO's role was limited to owning and operating the SuperMed network, and negotiating agreements with providers and networks.  *See* ECF Dkt. #48 at 5-7; ECF Dkt. #58-2 at 10.  The Sixth Circuit has defined a fiduciary to include a corporation exercising discretionary authority or discretionary control respecting management of a plan, or that has discretionary authority or discretionary responsibility in the administration of such plan.  *Deschamps*, 840 F.3d at 277.  Purely ministerial functions, such as processing claims, are not fiduciary duties.  *Id.*  Further, this Court has explained that "[t]he Sixth Circuit has found third-party administrators [like the defendant] liable as fiduciaries under a control-of-assets-theory only when the administrator had unilateral authority to dispose of plan assets."  *Dana Ltd.*, 984 F. Supp. 2d at 762.  Additionally, the Sixth Circuit has held that negotiating and establishing networks is not a fiduciary duty under ERISA.  *See Deluca*, 628 F.3d at 747.

Plaintiffs' argument that Defendant MMO has authority and/or control of Plaintiff Fleet's due to its billing practices is unconvincing.  The TPA Agreement specifically states that Plaintiff Fleet had the sole discretion whether to pay a claim.  ECF Dkt. #58-2 at 10.  Moreover, Defendant MMO's role in this case, essentially owning and operating the SuperMed network and submitting bills to Plaintiff Fleet for payment within two days, is insufficient to establish that Defendant MMO

exercised authority and/or control over Plaintiff Fleet's funds.  Instead, Defendant MMO operated the SuperMed network and processed claims - the types of functions considered ministerial in the Sixth Circuit.  *See Deschamps*, 840 F.3d at 277.  Further, Defendant MMO does not have unilateral authority to dispose of plan assets.  *Dana Ltd.*, 984 F. Supp. 2d at 762.  While Plaintiffs attempt to claim that the speedy payment requirements under the TPA Agreement, with the threat of suspending benefits if a payment is missed, gave Defendant MMO control and/or authority over Plaintiff Fleet's funds, they cite no legal precedent for such an expansion of the definition of the ability to dispose of plan assets.  Finally, it appears from Defendant MMO's conduct and the TPA Agreement that Defendant MMO primarily negotiated agreements with providers and networks, the type of conduct that is not fiduciary in nature.[20]  *See Deluca*, 628 F.3d at 747.  For these reasons, the undersigned recommends that the Court dismiss Count I (breach of fiduciary duty under ERISA) of Plaintiffs' Amended Complaint as it pertains to Defendant MMO with prejudice.

## 2.  ERISA Preemption

Defendant MMO also asserts that Plaintiffs' state law claims for breach of common law fiduciary duty (Count II) and negligence (Count X) are preempted by ERISA.[21]  ECF Dkt. #58-1 at 15-18, 19-20.  Citing 29 U.S.C. § 1144, Defendant MMO states that the remedial scheme set forth by ERISA shall supersede any and all state laws insofar as they may now or hereinafter relate to any employee benefit plan.  *Id.* at 15.  Defendant MMO indicates that the Supreme Court of the United States and the Sixth Circuit have recognized the broad and expansive scope of ERISA preemption.  *Id.* at 15-16 (citing *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004); *Cromwell*, 944 F.2d at 1272).  Next, Defendant MMO states that state law fiduciary duty claims are preempted when the

---

[20]Defendant MMO also asserts that it is not a fiduciary as a result of its parent relationship with Defendant MMS.  ECF Dkt. #58-1 at 19-20.  Plaintiffs acknowledge that the parent relationship alone does not create a fiduciary duty, and claims that Defendant MMO's actions created the fiduciary duty.  ECF Dkt. #64-1 at 13.  As discussed herein, Defendant MMO's actions are insufficient to create a fiduciary duty.

[21]Defendant MMO also asserts that Plaintiffs fail to state a claim in Count II and Count X.  ECF Dkt. #58-1 at 14-15, 19-20.  Since Count II and Count X are preempted by ERISA, the Court need not address whether Plaintiffs have failed to state a claim in these counts.

relationship arises under and relates to ERISA regardless of whether an ERISA fiduciary duty claim can actually be maintained.  *Id.* at 16-17 (citing *Smith*, 170 F.3d at 613).

Continuing, Defendant asserts that the Amended Complaint and TPA Agreement make clear that Plaintiff Fleet contracted with Defendant MMS for the purpose of claims administration services to an ERISA plan.  ECF Dkt. #58-1 at 17.  Defendant MMO claims that it, Defendant MMS, and Plaintiff Fleet all agreed pursuant to the TPA Agreement that all duties that were assumed by Defendant MMO and Defendant MMS were ERISA-based obligations.  *Id.*  Quoting the Sixth Circuit, Defendant MMO asserts that "common law fiduciary duty claims are clearly preempted by ERISA."  *Id.* (quoting *Smith*, 170 F.3d at 613).  According to Defendant MMO, allowing Plaintiffs to pursue a common law fiduciary duty claim would merely provide them an alternative enforcement mechanism to the breach of fiduciary duty obligation and relief provided for under ERISA, which contradicts the enforcement mechanism explained in *PONI*.[22]  *Id.*

Regarding Plaintiffs' negligence claim (Count X), Defendant MMO asserts that the claim clearly relates to ERISA in that it alleges that Defendant MMO was negligent in performing duties that Plaintiffs have claimed arise under and relate to ERISA.  ECF Dkt. #58-1 at 19-20.  Defendant MMO states that Plaintiffs' Amended Complaint charges that, pursuant to ERISA, Defendant MMO may only demand payment for health and welfare claims that are medically necessary and not fraudulent, excessive, wasteful, or abusive.  *Id.* at 20.  According to Defendant MMO, Plaintiffs' negligence claim may only be enforced pursuant to ERISA's statutory remedial provisions.  *Id.* (citing *Cromwell*, 944 F.2d at 1276).

---

[22]As stated above, the Sixth Circuit has identified the following three types of claims preempted by ERISA:

> ERISA preempts state laws that (1) mandate employee benefit structures or their administration; (2) provide alternative enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.

*PONI*, 399 F.3d at 698.

-25-

Plaintiffs' contend that ERISA does not preempt their common law breach of fiduciary claim or negligence claim. ECF Dkt. #64-1 at 11-14. The argument regarding preemption put forth by Plaintiffs relating to the state-law claims against Defendant MMO closely resembles the argument regarding preemption made by Plaintiffs relating to Defendant UPMC, and fails for those same reasons.[23] *Id.* at 11-13. In addition, Plaintiffs assert that the common law claims are alternative theories of recovery, to be pursued only if the Court finds that Plaintiffs have no claim under ERISA. *Id.* at 12-13.

Plaintiffs' state law claims relate to an employee benefit plan and therefore fall under ERISA's preemption clause. As an initial matter, Plaintiffs' assertion that the common law claims should not be preempted because they are an alternative theory of recovery if ERISA fails is unconvincing. Plaintiffs' assertion that the state law claims are alternative theories of recovery, only to be addressed in the event the ERISA claim fails, would allow parties to circumvent ERISA's preemption provisions. Moving on to whether Plaintiffs' state law claims are preempted, common law causes of action that "relate to" an employee benefit plan fall under ERISA's preemption clause.[24] *Pilot Life Ins.*, 481 U.S. at 47. The Supreme Court of the United States has recognized the expansive sweep of ERISA's preemption clause, explaining that the phrase "relate to" was assigned its broad common-sense meaning and that a state law "relate[s] to" a benefit plan in the normal sense of the phrase if it has a connection with or reference to such a plan. *Id.* Additionally, the Supreme Court of the United States has emphasized that the preemption clause is not limited to state laws specifically designed to affect employee benefit plans. *Id.* (internal citation omitted). Further, the Sixth Circuit has explained that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell*, 944 F.2d at 1276.

In this case, the "Summary Plan Description For Qualified Members and Dependents for [Plaintiff Fleet]" includes the following language:

---

[23]*See supra* at IV(A)(2).

[24]Plaintiffs do not assert that their state law claims are subject to a statutory exemption. *See* ECF Dkt. #66-1 at 10-11; 29 U.S.C. § 1144.

-26-

**ESSENTIAL HEALTH BENEFITS**

Medically Necessary charges for Essential Health Benefits will be paid by the Fund for Members and Dependents as provided in the Schedule of Benefits for each plan.

The plan shall pay reasonable and customary charges, when medically necessary, incurred by a Member or Dependent for medical services, supplies and treatment performed by a physician, or charges for rental of braces, crutches, wheelchairs, hospital-type beds and such durable medical equipment as may be approved by the fund.  Purchase of such articles will be approved only if deemed by the Fund to be more economical than rental.

ECF Dkt. #56-3 at 13.  In Count II, Plaintiffs allege, in relevant part, the following:

142.   [Defendant MMS], [Defendant MMO], and [Defendant MSC] breached their fiduciary duties by, among other things failing to properly investigate claims submitted by [Defendant Trinity], STAT, and [Defendant UPMC] for services rendered to [Plaintiff Sharon McHugh] by failing to identify the claims submitted by [Defendant Trinity], STAT, and [Defendant UPMC] as possibly fraudulent, excessive, abusive, or wasteful; by using [Plaintiff Fleet's] money to pay for claims submitted by [Defendant Trinity], STAT, and [Defendant UPMC] without sufficient investigation and by failing to properly adjudicate such claims.

ECF Dkt. #48 at 18.  Plaintiffs allege the following, in relevant part, in Count X:

208.   Each of Defendant owed each of the Plaintiffs duties of care, including, but not limited to only charging Plaintiffs for medically necessary services.

209.   Each of the Defendant also owed a duty of care not to charge of [sic] approve fraudulent, excessive, abusive, or wasteful amounts.

210.   As detailed above each Defendant has breached its duty by charging services that were not medically necessary or participated in a scheme or knowingly facilitated the charging of such services.

211.   As detailed above each Defendant has breached its duty of care by charging or participating in a scheme or knowingly facilitating charges for medical services that were excessive, abusive, wasteful and possibly fraudulent.

*Id.* at 25-26.

Plaintiffs' state law claims against Defendant MMO relate to Plaintiff Fleet's employee benefits plan and are thus preempted by ERISA.  *See Cromwell*, 944 F.2d at 1276.  Regarding Plaintiffs' common law breach of fiduciary claim (Count II), Plaintiffs allege that Defendant MMO failed to evaluate claims submitted by various defendants in this case that may have been fraudulent, excessive, abusive, or wasteful.  Such a finding would require an analysis of Plaintiff Fleet's plan documents to determine what treatment would be considered medically necessary as the need for such a determination is included in the "Essential Health Benefits" section of the plan summary.

-27-

Case: 1:17-cv-01413-SL  Doc #: 85  Filed: 06/25/18  28 of 41.  PageID #: 1355


*See* ECF Dkt. #56-3 at 13.  As for Plaintiffs' negligence claim (Count X), Plaintiffs specifically and repeatedly assert that Defendant MMO, along with the other defendants, charged for services that were not "medically necessary" or were fraudulent, excessive, abusive, or wasteful.  ECF Dkt. #48 at 25-26.  Likewise, this determination would require an analysis of the plan documents.  Each of Plaintiffs' state law claims against Defendant MMO invokes determinations directly addressed in Plaintiff Fleet's plan documents and thus relate to Plaintiff Fleet's employee benefit plan.  The state law claims asserted by Plaintiffs have a connection with or reference to Plaintiff Fleet's employee benefit plan and are thus preempted by ERISA.  For these reasons, the undersigned recommends that the Court dismiss Count II (breach of common law fiduciary duty) and Count X (negligence) of Plaintiffs' Amended Complaint as they pertain to Defendant MMO with prejudice.

### C.   Defendant MMS's Motion For Partial Judgment on the Pleadings (ECF Dkt. #59)

Defendant MMS filed a motion for partial judgment on the pleadings on January 5, 2018.  ECF Dkt. #59.  Plaintiffs' filed a response in opposition to Defendant MMS's motion for partial judgment on the pleadings on February 7, 2018.  ECF Dkt. #63.  Defendant MMS filed a reply on February 23, 2018.  ECF Dkt. #72.

### 1.   ERISA Preemption

Defendant MMS asserts that Plaintiffs state law claims for breach of common law fiduciary duty (Count II), breach of contract (Count V), and negligence (Count X) claims are preempted by ERISA.[25]  ECF Dkt. #59-1 at 8-19.  First, Defendant MMS provides a summary of the ERISA preemption framework, noting that the Supreme Court of the United States and Sixth Circuit have recognized the broad and expansive scope of ERISA preemption.  *Id.* at 8 (citing *Aetna Health, Inc.*,

---

[25]Defendant MMS reaffirms its denial of any fiduciary liability to Plaintiffs under the allegations contained in the Amended Complaint. ECF Dkt. #59-1 at 10, n. 4.  Further, Defendant MMS notes that the Amended Complaint did not contain a fourth count and instead jumped from Count III to Count V.  *See* ECF Dkt. #48.  For the purpose of consistency with the Amended Complaint, the instant Report and Recommendation will continue to refer to the counts by the numbers assigned in the Amended Complaint.  In addition to asserting that Plaintiffs' state law claims are preempted by ERISA, Defendant MMS argues that Plaintiffs have failed to state a claim for breach of contract (Count V) and negligence (Count X).  The Court need not address these arguments as Plaintiffs' state law claims are preempted by ERISA.

542 U.S. at 208; *Cromwell*, 944 F.2d at 1276).  Continuing, Defendant MMS indicates that the Sixth Circuit provided a framework to identify three types of state laws that are preempted by ERISA. *Id.* (citing *PONI*, 399 F.3d at 698).

Regarding Plaintiffs' breach of common law fiduciary duty claim (Count II), Defendant MMS states that Plaintiffs attempt to distinguish this claim, and presumably avoid preemption, by alleging that the count is plead in the alternative in the event that Court finds this case is not governed by ERISA.  ECF Dkt. #59-1 at 9.  Defendant MMS contends that Plaintiffs claims are governed by ERISA and the breach of common law fiduciary duty claim is preempted.  *Id.* Continuing, Defendant MMS states that Plaintiffs allege that: Plaintiff Fleet's plan at issue is a self-funded employee benefit plan; the plan complies with and is governed by ERISA; Defendant MMS is subject to ERISA; and Defendant MMS has a fiduciary relationship with Plaintiff Fleet because of the alleged discretionary authority over plan assets and claims administration.  *Id.*  Defendant MMS agrees that the plan is a self-funded employee benefit plan and admits that MMS may have contractual obligations under the TPA Agreement that are subject to ERISA.  *Id.* at 9-10.

Continuing, Defendant MMS states that although it is not the plan sponsor or administrator, as those terms are defined by ERISA, it does agree to be a named fiduciary for the limited purposes of administration and hearing appeals.  *Id.* at 10.  Defendant MMS states, "[c]learly, to the extent any fiduciary obligation exists on the part of [Defendant MMS], it arises under ERISA, and Plaintiffs' and [Defendant MMS's] pleadings are in agreement on this point."  *Id.*  Further, Defendant MMS claims that allowing Plaintiffs to pursue a common law breach of duty claim would merely provide an alternative enforcement mechanism to the breach of fiduciary obligations and relief provided for under ERISA, contradicting the Sixth Circuit's *PONI* standard.  *Id.*

Defendant MMS next asserts that Plaintiffs' negligence claim (Count V) is also subject to preemption and should be dismissed.  ECF Dkt. #59 at 11.  Continuing, Defendant MMS again cites *Cromwell* for the proposition that ERISA preempts virtually all state law claims related to ERISA-governed employee benefit plans.  *Id.* (citing *Cromwell*, 944 F.2d at 1276).  Defendant MMS states that this preemption includes state law breach of contract claims.  *Id.* (citing *PONI*, 399 F.3d at 703; *Mertens*, 508 U.S. at 254).  Next, Defendant MMS asserts that Plaintiffs' claim that it breached the

TPA Agreement by charging Plaintiff Fleet for claims that were not covered expenses or medically necessary, and by charging Plaintiff Fleet for more than the allowed amount under the TPA Agreement. *Id.* Defendant MMS asserts that the pleadings make clear that these alleged breaches all relate to its ERISA-based duties and obligations with respect to Plaintiff Fleet's plan and are thus subject to preemption. *Id.* Continuing, Defendant MMS states that "[o]nly when then alleged conduct is 'entirely unrelated to and outside the scope of [the fiduciary's] duties under the plan or in carrying out the terms of the plan' is the breach of contract claim not preempted." *Id.* at 12 (quoting *PONI*, 399 F.3d at 699). Defendant MMS states that all of the conduct alleged by Plaintiffs in connection with their breach of contract claim is also alleged to arise under and relate to ERISA, and any failure to properly administer claims under the TPA Agreement is governed by ERISA and subject to preemption. *Id.* at 11-12. Further, Defendant MMS quotes the Sixth Circuit, stating, "[p]laintiffs' contract claims present a mere duplication of their ERISA arguments. In order to adjudicate the breach of contract claim, we would inevitably be evaluating whether or not any provisions of ERISA were violated." *Id.* at 13 (quoting *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 590 (6th Cir. 2017)).

Regarding Plaintiffs' negligence claim (Count X), Defendant MMS asserts that this claim relates to ERISA in that it alleges Defendant MMS was negligent in performing duties that Plaintiffs claim arise under ERISA. ECF Dkt. #59-1 at 17. Defendant MMS then notes that the Amended Complaint repeatedly described its obligations with the introduction "[p]ursuant to ERISA." *Id.* (citing ECF Dkt. #48 at 6). Continuing, Defendant MMS states, "ERISA preempts state common law claims of fraudulent or negligent misrepresentation when the false representations concern the existence or extent of benefits under an employee benefit plan." *Id.* at 17-18 (quoting *Prachun v. CBIZ Benefits & Ins. Servs., Inc.*, No. 2:14-cv-2251, 2015 WL 457851, at *5 (S.D. Ohio Feb. 3, 2015)). According to Defendant MMS, because the parties acknowledge that its obligations under the TPA Agreement relate to ERISA, Plaintiffs' negligence claim may only be enforced pursuant to ERISA's statutory remedial provisions. *Id.* at 18 (citing *Cromwell*, 944 F.2d at 1276).

Plaintiffs assert that none of the state law claims raised against Defendant MMS relate to the *PONI* categories and are instead about Defendant MMS's breach of contract and abuse of duties of

-30-

care owed to Plaintiffs under common law.  ECF Dkt. #63-1 at 7.  Regarding the common law breach of fiduciary duties claim (Count II), Plaintiffs again assert that the claim is an alternative, only to be pursued if the Court finds that Plaintiffs have no claims under ERISA.  *Id.* at 8.  Plaintiffs then cite to the Section 5.2 of the Amendment to the TPA Agreement, stating that Defendant MMS agreed to be Plaintiff Fleet's "named fiduciary," albeit under limited circumstances, and that Plaintiff Fleet does not have the authority to exclude, waive, or limit Defendant MMS's common law fiduciary duty.  *Id.* (citing ECF Dkt. #58-2 at 38).

Next, Plaintiffs aver that ERISA does not preempt the breach of contract claim (Count V) because the claim is simply an attempt to recover money Plaintiff Fleet lost due to Defendant MMS's breach.  ECF Dkt. #63-1 at 9.  Plaintiffs assert that the breach of contract claim can be maintained since it is Plaintiff Fleet's only recourse for recovering the damages resulting from the contract between [Plaintiff Fleet] and [Defendant MMS].  *Id.* (citing *Providence Health Plan v. McDowell*, 385 F.3d 1168. 1172-73 (9th Cir. 2014)).

Regarding the negligence claim (Count X), Plaintiffs simply state:

> As with the other common law claims, Plaintiffs' negligence claim does not seek to enforce Plaintiffs' rights under ERISA.  Moreover, allowing the claim to proceed does not undermine Congress's intentions when passing ERISA's preemption regulations.

ECF Dkt. #63-1 at 10.

Plaintiffs' state law claims relate to an employee benefit plan and therefore fall under ERISA's preemption clause.  As an initial matter, Plaintiffs' assertion that the common law claims should not be preempted because they an alternative theory or recovery if ERISA fails is unconvincing.  Plaintiffs' assertion that the state law claims are alternative theories of recovery, only to be addressed in the event the ERISA claim fails, would allow parties to circumvent ERISA's preemption provisions.  Moving on to whether Plaintiffs' state law claims are preempted, common law causes of action that "relate to" an employee benefit plan fall under ERISA's preemption clause.[26]  *Pilot Life Ins.*, 481 U.S. at 47.  The Supreme Court of the United States has recognized the

---

[26]Plaintiffs do not assert that their state law claims are subject to a statutory exemption.  *See* ECF Dkt. #66-1 at 10-11; 29 U.S.C. § 1144.

expansive sweep of ERISA's preemption clause, explaining that the phrase "relate to" was assigned its broad common-sense meaning and that a state law "relate[s] to" a benefit plan in the normal sense of the phrase if it has a connection with or reference to such a plan. *Id.* Additionally, the Supreme Court of the United States has emphasized that the preemption clause is not limited to state laws specifically designed to affect employee benefit plans. *Id.* (internal citation omitted). Further, the Sixth Circuit has explained that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell*, 944 F.2d at 1276.

As stated above, the "Summary Plan Description For Qualified Members and Dependents for [Plaintiff Fleet]" includes the following language:

### ESSENTIAL HEALTH BENEFITS

Medically Necessary charges for Essential Health Benefits will be paid by the Fund for Members and Dependents as provided in the Schedule of Benefits for each plan.

The plan shall pay reasonable and customary charges, when medically necessary, incurred by a Member or Dependent for medical services, supplies and treatment performed by a physician, or charges for rental of braces, crutches, wheelchairs, hospital-type beds and such durable medical equipment as may be approved by the fund. Purchase of such articles will be approved only if deemed by the Fund to be more economical than rental.

ECF Dkt. #56-3 at 13. In the Amended Complaint, Plaintiffs allege, in relevant part, the following:

[Count II - Breach of Common Law Fiduciary Duty]

138.    [Defendant MMS], [Defendant MMO], and [Defendant MSC] were each in a fiduciary relationship with [Plaintiff Fleet] because, among other things, they had common control over [Plaintiff Fleet's] assets.

139.    As fiduciaries, [Defendant MMS], [Defendant MMO], and [Defendant MSC] were required to, among other this, fairly discharge its duties in the interest of [Plaintiff Fleet's] participants and beneficiaries, and discharge its duties with care, skill, prudence, and diligence.

142.    [Defendant MMS], [Defendant MMO], and [Defendant MSC] breached their fiduciary duties by, among other things, failing to properly investigate claims submitted by [Defendant Trinity], STAT, and [Defendant UPMC] for services rendered to [Plaintiff Sharon McHugh] by failing to identify claims submitted by [Defendant Trinity], STAT, and [Defendant UPMC] as possibly fraudulent, excessive, abusive or wasteful; by using [Plaintiff Fleet's] money to pay for claims submitted by [Defendant Trinity], STAT, and [Defendant UPMC] without sufficient investigation and by failing to properly adjudicate such claims.

[Count V - Breach of Contract]

159.    Upon knowledge and belief, STAT Medivac charged to the Plaintiffs a sum in excess of $16,683.00 for a so-called life flight that was not medically necessary and by [Defendant MMO's] own documents STAT Medevac was by a non-contracting provider. [sic]

161.    By express contract provisions, [Defendant MMS] is not allowed to charge the Plaintiffs for claims not covered by the Plans.

162.    The Emerald Health claims, the STAT Medevac flight, and the out of network premiums charged by [Defendant UPMC] were not covered expenses under the Plans.

163.    By express contract provisions, [Defendant MMS] is not allowed to charge Plaintiffs for claims that are not medically necessary.

164.    The STAT Medevac flight was not medically necessary.

[Count X - Negligence]

208.    Each of the Defendants owed each of the Plaintiffs duties of care, including but not limited to charging Plaintiffs for medically necessary services.

209.    Each of the Defendants also owed a duty of care not charge of [sic] approve fraudulent, excessive, abusive, or wasteful amounts.

210.    As detailed above each Defendant has breached its duty by charging services that were not medically necessary or participated in a scheme or knowingly facilitated the charging of such services.

211.    As detailed above each Defendant has breached its duty of care by charging or participating in a scheme or knowingly facilitating charges for medical services that were excessive, abusive, wasteful and possibly fraudulent.

ECF Dkt. #48 at 17-18.

Plaintiffs' state law claims against Defendant MMS relate to Plaintiff Fleet's employee benefits plan and are thus preempted by ERISA. *See Cromwell*, 944 F.2d at 1276. Regarding the breach of common law fiduciary duty claim, Plaintiffs are unable to show that the claim is not an alternative enforcement method contradicting the Sixth Circuit's holding in *PONI. See* 399 F.3d at 698. Plaintiffs argument that their breach of common law fiduciary duty claim against Defendant MMS is not an alternative enforcement method is belied by the similarities in the pleadings regarding the alleged breaches of fiduciary duty under ERISA and the common law. *See* ECF Dkt. #48 at 15-18. Additionally, a determination of what medical services were medically necessary, rather than excessive or wasteful, goes to the definition of "medical necessity," which is addressed

-33-

in the "Summary Plan Description For Qualified Members and Dependents for [Plaintiff Fleet]" and therefore the ERISA plan itself.

Plaintiffs' breach of contract claim suffers from similar defects.  Again, Plaintiffs challenge the medical necessity of treatment provided to Plaintiff Sharon McHugh when claiming that the "so-called life flight" was not medically necessary.  *See* ECF Dkt. #48 at 20.  Moreover, Plaintiffs are not seeking to enforce a contractual term or recover from a breach of a contract that was separate from and exists outside of ERISA plan terms.  Plaintiffs are instead claiming that claims were not properly paid by Defendant MMS.  The proper avenue for addressing whether claims were paid correctly in connection with an ERISA plan is through the remedial statutory causes of action provided by ERISA.

Likewise, Plaintiffs' negligence claim repeatedly asserts that the medical services charged to Plaintiffs were not "medically necessary" or were excessive, abusive, wasteful, and possibly fraudulent.  Such a finding would require an analysis of Plaintiff Fleet's plan documents to determine what treatment would be considered medically necessary as the need for such a determination is included in the "Essential Health Benefits" section of the plan summary.  Each of Plaintiffs' state law claims against Defendant MMO invokes determinations directly addressed in Plaintiff Fleet's plan documents and thus relate to Plaintiff Fleet's employee benefit plan.  The state law claims asserted by Plaintiffs have a connection with or reference to Plaintiff Fleet's employee benefit plan and are thus preempted by ERISA.  For these reasons, the undersigned recommends that the Court dismiss Count II (breach of common law fiduciary duty), Count V (breach of contract), and Count X (negligence) of Plaintiffs' Amended Complaint as they pertain to Defendant MMS with prejudice.

### D. Defendant Trinity's Motion to Dismiss (ECF Dkt. #60)

Defendant Trinity filed its motion to dismiss on January 5, 2018.  ECF Dkt. #60.  Plaintiffs filed a response in opposition to Defendant Trinity's motion to dismiss on February 9, 2018.  ECF Dkt. #67.  Defendant Trinity filed a reply on February 22, 2018.  ECF Dkt. #70.

### 1.    ERISA Fiduciary

In the motion to dismiss, Defendant Trinity first asserts that it cannot be considered a fiduciary under ERISA.  ECF Dkt. #60-1 at 4.  Defendant Trinity states that is is clear from the plain language of ERISA and subsequent interpretive case law that a healthcare provider cannot be considered a fiduciary under ERISA when making medical decisions unrelated to the administration of a plan.  *Id.*  Continuing, Defendant Trinity points to Plaintiffs' Amended Complaint, which alleges that Defendant Trinity breached its fiduciary duty when deciding to send Plaintiff Sharon McHugh to a tertiary care center outside of her primary care network.  *Id.* (citing ECF Dkt. #48 at 16).  Defendant Trinity states that Plaintiffs' allegation that it had functional control over the administration of Plaintiff Fleet's plan when deciding to transfer Plaintiff Sharon McHugh to a tertiary care center effectively places a non-existent fiduciary duty on healthcare providers to put the financial considerations of a patient's healthcare over potentially life-saving medical treatment as determined by the patient's physicians.  *Id.* at 5.  According to Defendant Trinity, Plaintiffs have alleged no facts to support the claim that it exercised any type of functional control over [Plaintiff Fleet's] plan.  *Id.*

Plaintiffs assert that "[Defendant Trinity's] *de facto* exercise of control of [Plaintiff Fleet's] funds by merely sending a claim to Medical Mutual renders it [Plaintiff Fleet's] fiduciary under ERISA."  ECF Dkt. #67-1 at 7.  Continuing, Plaintiffs cite Supreme Court of the United States and Sixth Circuit case law explaining that: any entity exercising control over a plan's assets becomes a fiduciary; the fiduciary relationship is not based on the formalistic definition of trustee; the functional definition of trustee under ERISA was intended to be broader than the purely formalistic common law definition; and the determination of fiduciary status is fact intensive and ordinarily inappropriate for a motion to dismiss.  *Id.* at 7-8 (citing *Pipefitters Local 636 Ins. Fund*, 722 F.3d at 865; *Pegram*, 530 U.S. at 223; *Mertens*, 508 U.S. at 262; *Smith*, 170 F.3d at 613; *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d at 1030).  According to Plaintiffs, "[Defendant Trinity] chose to join the Medical Mutual network and present its billings against the Plaintiffs through the Medical Mutual network precisely because [Defendant MMO] empowered [Defendant Trinity] with authority over the disposition of [Plaintiff Fleet's] assets."  *Id.* at 8.

-35-

Plaintiffs have failed to establish that Defendant Trinity is a fiduciary under ERISA.  While the undersigned recognizes that the definition of fiduciary is intended to be broader than the common law definition and does not turn on formal designations, Plaintiffs' position extends this broadness beyond the intentions of ERISA.  *See Smith*, 170 F.3d at 613.  Based on the factual allegations contained in the Amended Complaint, Plaintiff Sharon McHugh was admitted to Defendant Trinity's emergency room and after one hour of care she was transferred by Defendant Trinity to STAT Medevac for transportation via air ambulance to a facility operated by Defendant UPMC.  ECF Dkt. #48 at 10-11.  Defendant Trinity is a medical provider that had no relationship with Plaintiffs prior to Plaintiff Sharon McHugh arriving at its facility for treatment.  Plaintiffs' position, namely, that Defendant Trinity should be considered a fiduciary under ERISA, is overly broad and would essentially convert healthcare providers into ERISA fiduciaries whenever transacting with an ERISA fund.  For these reasons, the undersigned recommends that the Court find that Defendant Trinity is not a fiduciary pursuant to ERISA and dismiss Count I (breach of fiduciary duty under ERISA) of Plaintiffs' Amended Complaint as it pertains to Defendant Trinity with prejudice.

## 2.     ERISA Preemption

Defendant Trinity avers that each of Plaintiffs' state law claims are preempted by ERISA.[27] ECF Dkt. #60-1 at 10.  In the motion to dismiss, Defendant Trinity asserts that Plaintiffs seek to recover amounts paid for benefits paid on behalf of Plaintiff Fleet for care and treatment provided to Plaintiff Sharon McHugh in Defendant Trinity's emergency department and during a life flight to a tertiary care center that Plaintiffs claim was not medically necessary.  *Id.*  Continuing, Defendant Trinity claims that Plaintiffs' state law claims are nothing more than a creative duplication of the ERISA claims asserted in Count I of the Amended Complaint.  *Id.* at 7.  Defendant Trinity asserts that Plaintiffs now seek to recover plan benefits in the form of medical bills allegedly paid in error by the plan fiduciaries, and that this clearly falls under the exclusive ERISA civil

---

[27]Plaintiffs' outstanding state law claims against Defendant Trinity are: breach of common law fiduciary duty (Count III); negligent misrepresentation (Count VI); fraud (Count VII); unjust enrichment (Count VIII); and negligence (Count X).  ECF Dkt. #48.

enforcement remedy promulgated by Congress regardless of Defendant Trinity's status as a non-fiduciary. *Id.* (citing *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 419 (4th Cir. 1993); *Gibson v. Prudential Life Ins. Co. of Am.*, 915 F.2d 414, 418 (9th Cir. 1990); *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1564-65 (11th Cir. 1987)).

Next, Defendant Trinity states that a review of the "Summary Plan Description" for Plaintiff Fleet reveals that any monetary relief sought by Plaintiffs in this action would require this Court to engage in an interpretation of Plaintiff Fleet's plan documents to determine the meaning of "reasonable and customary charges, when medically necessary, incurred by a Member or Dependent for medical services." ECF Dkt. #60-1 at 8 (citing ECF Dkt. #56-3 at 13). Continuing, Defendant Trinity asserts that the fact that the plan would require interpretation is further proof that Plaintiffs' state law claims and request for monetary relief are intertwined and therefore preempted by ERISA. *Id.* (citing *Ky. Laborers Dist. Council Health & Welfare Fund*, 861 F.2d at 1003).

Plaintiffs contend that ERISA does not preempt their state law claims.[28] ECF Dkt. #67-1 at 8. Continuing, Plaintiffs assert that the question of whether a state law is related to an employee benefit plan requires a pragmatic approach starting from the "presumption that Congress does not intend to supplant state law." *Id.* (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). Plaintiffs state that ERISA does not preempt claims against parties that have wrongfully or fraudulently obtained money from a plan even when the entire dispute occurred within the context of a plan, and that a medical provider's obligation not to submit false and misleading claims is not dependent on ERISA plans but arises separately and independently from any contractual duties prescribed by ERISA. *Id.* (citing *Trustees of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 769-75 (7th Cir. 2002); *Aetna Health, Inc. v. Health Goals and Chiropractic Ctr., Inc.,* No. 10-5216, 2011 WL 1343047, at *6 (D.N.J. Apr. 7, 2011)). Next, Plaintiffs state that the Sixth Circuit has identified the following three types of claims preempted by ERISA:

---

[28]Plaintiffs arguments regarding preemption as to the state law claims against Defendant Trinity mirror the preemption arguments presented regarding Defendant UPMC. *See* ECF Dkt. #66-1 at 10-11; ECF DKt. #67-1 at 8-9.

> ERISA preempts state laws that (1) mandate employee benefit structures or their administration; (2) provide alternative enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself.

*Id.* at 9 (quoting *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir 2005) ("*PONI*") (internal citation omitted)). Finally, Plaintiffs claims that their state law claims do not fall into any of the *PONI* categories and that the claims are related to Defendant Trinity's abuse of duties that it owed Plaintiffs under common law. *Id.*

In the instant case, Plaintiffs' state law claims are preempted by ERISA. Common law causes of action that "relate to" an employee benefit plan fall under ERISA's preemption clause.[29] *Pilot Life Ins.*, 481 U.S. at 47. The Supreme Court of the United States has recognized the expansive sweep of ERISA's preemption clause, explaining that the phrase "relate to" was assigned its broad common-sense meaning and that a state law "relate[s] to" a benefit plan in the normal sense of the phrase if it has a connection with or reference to such a plan. *Id.* Additionally, the Supreme Court of the United States has emphasized that the preemption clause is not limited to state laws specifically designed to affect employee benefit plans. *Id.* (internal citation omitted). Further, the Sixth Circuit has explained that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell*, 944 F.2d at 1276.

As stated above, the "Summary Plan Description For Qualified Members and Dependents for [Plaintiff Fleet]" includes the following language:

### ESSENTIAL HEALTH BENEFITS

> Medically Necessary charges for Essential Health Benefits will be paid by the Fund for Members and Dependents as provided in the Schedule of Benefits for each plan.

> The plan shall pay reasonable and customary charges, when medically necessary, incurred by a Member or Dependent for medical services, supplies and treatment performed by a physician, or charges for rental of braces, crutches, wheelchairs, hospital-type beds and such durable medical equipment as may be approved by the fund. Purchase of such articles will be approved only if deemed by the Fund to be more economical than rental.

ECF Dkt. #56-3 at 13. In the Amended Complaint, Plaintiffs allege, in relevant part, the following:

---

[29]Plaintiffs do not assert that their state law claims are subject to a statutory exemption. *See* ECF Dkt. #66-1 at 10-11; 29 U.S.C. § 1144.

-38-

[Count III - Breach of Common Law Fiduciary Duty]

147.    [Defendant Trinity] breached its fiduciary duty to the Plaintiffs by referring [Plaintiff Sharon McHugh] to a non-SuperMed network provider without the justification of medical necessity.

[Count VI - Negligent Misrepresentation]

177.    [Defendant Trinity], STAT Medevac, and [Defendant UPMC] respectively made material misrepresentations when they submitted false and misleading bills for reimbursement of charges that were substantially in excess of the usual, customary, and reasonable charges for the same or similar medical services in the relevant market.

[Count VII - Fraud]

185.    [Defendant Trinity], STAT Medivac, and [Defendant UPMC] jointly and severally submitted false and misleading claims for the purpose of taking monies from the Plaintiffs to which they were not entitled, which included amounts that they knew were substantially in excess of the usual, customary, and reasonable charges for such services.

[Count VIII - Unjust Enrichment]

192.    [Defendant Trinity], STAT Medivac, [Defendant CEMWP], and [Defendant UPMC] respectively billed for services in an amount greatly in excess of the usual and reasonable billed charges for the same services in the relevant market.

[Count X - Negligence]

208.    Each of the Defendants owed each of the Plaintiffs duties of care, including, but not limited to only charging Plaintiffs for medically necessary services.

210.    As detailed above each Defendant has breached its duty of care by charging services that were not medically necessary or participated in a scheme or knowingly facilitated the charging of such services.

ECF Dkt. #48 at 19-26.

Plaintiffs' state law claims against Defendant Trinity relate to Plaintiff Fleet's employee benefits plan and are thus preempted by ERISA.  *See Cromwell*, 944 F.2d at 1276.  Each of Plaintiffs' state law claims against Defendant Trinity asserts that Defendant Trinity referred out or billed for services beyond what is usual, reasonable, and/or customary, or some combination of these terms, or services that were not medically necessary.  *See* ECF Dkt. #48 at 120-26.  The plan documents, as quoted above, indicate that "[t]he plan shall pay reasonable and customary charges, when medically necessary" and "this Plan may pay benefits that are later found to be greater than the allowable charge."  ECF Dkt. #56-3 at 13, 21.  Each of Plaintiffs' state law claims against

-39-

Defendant Trinity invokes determinations directly addressed in Plaintiff Fleet's plan documents and thus relate to Plaintiff Fleet's employee benefit plan.  The state law claims asserted by Plaintiffs have a connection with or reference to Plaintiff Fleet's employee benefit plan and are thus preempted by ERISA.  For these reasons, the undersigned recommends that the Court dismiss Count III (breach of common law fiduciary duty), Count VI (negligent misrepresentation), Count VII (fraud), Count VIII (unjust enrichment), and Count X (negligence) of Plaintiffs' Amended Complaint as they pertain to Defendant Trinity with prejudice.

### E.     Defendant MSC's Motion to Dismiss (ECF Dkt. #61)

Defendant MSC filed a motion to dismiss on January 5, 2018.  ECF Dkt. #61.  Plaintiffs did not file a response in opposition to Defendant MSC's motion to dismiss.  On February 9, 2018, the parties stipulated that all claims against Defendant MSC were dismissed without prejudice.  ECF Dkt. #75.  Accordingly, the undersigned recommends that the Court deny Defendant MSC's motion to dismiss as moot.

## V.     SUMMARY

For the foregoing reasons, the undersigned recommends that the Court:

A.     Grant Defendant UPMC's motion to dismiss (ECF Dkt. #56) in its entirety and dismiss all of Plaintiffs' claims against Defendant UPMC with prejudice.

B.     Grant Defendant MMO's motion to dismiss (ECF Dkt #58) in its entirety and dismiss all of Plaintiffs' claims against Defendant MMO with prejudice.

C.     Grant Defendant MMS's motion for partial judgment on the pleadings (ECF Dkt. #59) in its entirety and dismiss all of Plaintiffs' state law claims against Defendant MMS with prejudice, leaving only Count I (breach of fiduciary duty under ERISA) remaining at issue in this case.

D.     Grant Defendant Trinity's motion to dismiss (ECF Dkt. #60) in its entirety and dismiss all of Plaintiffs' claims against Defendant Trinity with prejudice.

E.     Deny Defendant MSC's motion to dismiss (ECF Dkt. #61) as moot.

Accordingly, if the Court adopts the instant Report and Recommendation, the only remaining claim in this case will be Plaintiffs' claim for breach of fiduciary duty claim (Count I) against Defendant MMS.

## VI.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court: GRANT Defendant UPMC's motion to dismiss (ECF Dkt. #56) as it pertains to Defendant UPMC in its entirety and dismiss all of Plaintiffs' claims with prejudice; GRANT Defendant MMO's motion to dismiss (ECF Dkt. #58) in its entirety and dismiss all of Plaintiffs' claims with prejudice; GRANT Defendant MMS's motion for partial judgment on the pleadings (ECF Dkt. #59) in its entirety and dismiss all of Plaintiffs' state law claims with prejudice; GRANT Defendant Trinity's motion to dismiss (ECF Dkt. #60) in its entirety and dismiss all of Plaintiffs' claims with prejudice; and DENY Defendant MSC's motion to dismiss (ECF Dkt. #61) as moot.


Date: June 25, 2018                                  ___/s/ George J. Limbert_____
                                                     GEORGE J. LIMBERT
                                                     UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-41-