# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| SHARON McHUGH, et al., | ) | CASE NO. 1:17CV1413 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| TRINITY HEALTH SYSTEM, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the report and recommendation ("R&R") (Doc. No. 85) of Magistrate Judge George J. Limbert, recommending that the Court grant defendant University of Pittsburgh Medical Center Presbyterian Shadyside's ("UPMC Presbyterian Shadyside") motion to dismiss (Doc. No. 56) in its entirety and dismiss all of plaintiffs' claims against defendant UPMC Presbyterian Shadyside with prejudice; grant defendant Medical Mutual of Ohio's ("MMO") motion to dismiss (Doc. No. 58) in its entirety and dismiss all of plaintiffs' claims against defendant MMO with prejudice; grant defendant Medical Mutual Services, LLC's ("MMS") motion for partial judgment on the pleadings (Doc No. 59) in its entirety and dismiss all of plaintiffs' state law claims against defendant MMS with prejudice, leaving only Count I (breach of fiduciary duty under ERISA) remaining at issue in this case; grant defendant Trinity Health System's ("Trinity") motion to dismiss (Doc. No. 60) in its entirety and dismiss all of plaintiffs' claims against defendant Trinity with prejudice; and deny defendant Multiplan Services Corporation's ("MSC") motion to dismiss (Doc. No. 61) as moot, since MSC has already been

dismissed from this action. Plaintiffs' objections to the R&R (Doc. No. 86 ["Obj."]) challenge the ruling only with respect to the finding that neither UPMC Presbyterian Shadyside nor Trinity is a fiduciary of the Fund. Defendants UPMC Presbyterian Shadyside and Trinity filed separate oppositions to plaintiffs' objections (Doc. No. 87 ["UPMC Presbyterian Shadyside Opp'n"] and Doc. No. 88 ["Trinity Opp'n"]). Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted its de novo review of the matters properly raised in the objections. For the reasons discussed herein, plaintiffs' objections to the R&R are OVERRULED and the R&R is ACCEPTED.

## I. BACKGROUND

Plaintiff Fleet Owners Insurance Fund ("the Fund") is a nonprofit Taft-Hartley multiemployer health and welfare insurance fund formed by Teamsters Local 964 and participating employers with collective bargaining agreements. (Doc. No 48, Amended Complaint ["Am. Compl."] ¶ 3.) Plaintiff Charles McHugh belongs to a union that collectively bargained on his behalf for a portion of his wages to be contributed to Fleet in exchange for medical coverage under one of its health and welfare plans. (*Id.* ¶¶ 2, 16–19.) As the wife of plaintiff Charles McHugh, plaintiff Sharon McHugh ("McHugh") is a covered person under the plan. (*Id.* ¶ 20.)

The primary provider network for McHugh's health plan is the SuperMed network, which is owned and operated by MMO. (*Id.* ¶ 21.) Fleet chose SuperMed as its provider network, in part, because MMS is the administrator of Fleet's plans and thereby agreed to adjudicate health-care claims made against Fleet's members and their families. (*Id.* ¶¶ 26–27.).

On March 19, 2016, McHugh presented at an emergency room operated by Trinity, a non-SuperMed network health-care provider. (*Id.* ¶¶ 67–69.) After one hour of care, McHugh was transferred via air ambulance to a facility operated by UPMC Presbyterian Shadyside, also a non-

SuperMed network health-care provider, due to concerns that she had contracted sepsis. (*Id.* ¶¶ 75, 83.)

McHugh received treatment at UPMC Presbyterian Shadyside's facility for several weeks. During that time, McHugh was billed in excess of $1,000,000.00 for her stay at UPMC Presbyterian Shadyside's facility. (*Id.* ¶¶ 109–15.) After her release from UPMC Presbyterian Shadyside's facility in April 2016, McHugh returned to UPMC Presbyterian Shadyside's facility for a number of surgeries and further treatments. (*Id.* ¶¶ 116–17.) As of the filing of the amended complaint on November 29, 2017, MMS has used funds from the Fund in excess of $1,200,000.00 towards UPMC Presbyterian Shadyside's bill. (*Id.* ¶ 122.) MMS, MMO, and UPMC Presbyterian Shadyside are seeking additional payments from plaintiffs in excess of $500,000.00. (*Id.* ¶ 123.)

Plaintiffs filed their complaint on July 5, 2017, and amended it on November 29, 2017. Shortly thereafter, the instant motions were filed. Following briefing, the parties stipulated to dismissal without prejudice of all claims against defendants Center for Emergency Medicine of Western Pennsylvania, Inc. ("CEMWP") and MSC. (Doc. No. 75.) Additionally, plaintiffs dismissed Count IX of the amended complaint (hospital malpractice) against UPMC Presbyterian Shadyside without prejudice. (*Id.*)

On February 14, 2018, the matter was referred to Magistrate Judge George J. Limbert, who issued the R&R regarding the dispositive motions filed by all remaining defendants. Plaintiffs filed two objections to the R&R, challenging only the finding that neither UPMC Presbyterian Shadyside nor Trinity is a fiduciary of the Fund. UPMC Presbyterian Shadyside and Trinity filed separate responses to plaintiffs' objections. The matter is ripe for the Court's de novo review.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at * 1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). *See also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"); LR 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections."). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In its de novo review of plaintiffs' objections, the Court applies the motion to dismiss standard. In the context of a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to plaintiffs and accept all well-pleaded material allegations in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

The sufficiency of the complaint is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of

the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a complaint to provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 683 (citation omitted).

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (This standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555); *see Gregory v. Shelby Cty.*, 220 F.3d 433, 446 (6th Cir. 2000) (the court should not accept conclusions of law or unwarranted inferences couched in the form of factual allegations). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy*

*Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (internal quotations marks omitted), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

## III.    DISCUSSION

Plaintiffs object solely to the R&R's conclusion that Count I of the amended complaint should be dismissed with prejudice as to both UPMC Presbyterian Shadyside and Trinity because neither is a fiduciary under ERISA which provides[1]:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial advisor to a 'plan' . . . ." *Pegram v. Herdrich*, 530 U.S. 211, 222, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000). When determining whether a fiduciary duty was breached under ERISA, "the courts 'must examine the conduct at issue to determine whether it constitutes "management" or "administration" of *the plan*, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards.'" *DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 747 (6th Cir. 2010) (emphasis added) (quoting *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000)). "[T]he threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as

---

[1] Plaintiffs' objections to the R&R with respect to UPMC Presbyterian Shadyside and Trinity are identical, except for one additional minor objection raised in regards to UPMC Presbyterian Shadyside. As such, the Court will address the objections against both defendants together.

a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint." *Pegram*, 530 U.S. at 226. At common law, "fiduciary functions" characteristically involved financial decisions about "managing assets and distributing property to beneficiaries." *Id.* at 231.

### A. Defendants UPMC Presbyterian Shadyside and Trinity as fiduciaries of the Fund

The R&R concluded that UPMC Presbyterian Shadyside and Trinity were not fiduciaries to the Fund within the meaning of ERISA and recommended that the Court dismiss Count I of plaintiffs' amended complaint as it pertains to these defendants. (R&R at 1338, 1363.[2]) In support of this finding, the R&R commented that "[p]laintiffs do not identify any case law extending fiduciary duties under ERISA to third-party medical providers who simply submitted bills for services rendered." (*Id.* at 1336). The R&R noted that neither UPMC Presbyterian Shadyside nor Trinity had any relationship with plaintiffs before McHugh arrived at each defendant's respective facility for treatment. (*Id.* at 1338, 1363.) Additionally, while recognizing that the definition of a fiduciary under ERISA is intended to be broader than the common law definition, the R&R found that plaintiffs' position "extends this broadness beyond the intentions of ERISA." (*Id.* at 1337, 1363 (citing *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999)).) The R&R expressed concern that plaintiffs' "overly broad" definition of fiduciary under ERISA would "essentially convert healthcare providers into ERISA fiduciaries whenever transacting with an ERISA fund." (*Id.* at 1338, 1363.) Further, with respect to UPMC Presbyterian Shadyside, the R&R rejected plaintiffs' claim that UPMC Presbyterian Shadyside had discretionary control over the Fund's

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

assets when UPMC Presbyterian Shadyside was still seeking additional money from plaintiffs. (*Id.* at 1336.)

In their objections to the R&R, plaintiffs contend that the ruling that UPMC Presbyterian Shadyside and Trinity are not fiduciaries as defined by ERISA is incorrect. Plaintiffs argue that, prior to McHugh arriving for treatment at the defendants' individual facilities, both defendants had entered into "fast pay" arrangements that third-party network administrators—PHCS and MMO's SuperMed—entered into on the Fund's behalf. (Obj. at 1370–71.) In essence, plaintiffs argue that defendants are fiduciaries of the Fund within the meaning of ERISA because UPMC Presbyterian Shadyside and Trinity both had payment arrangements with the Fund that allowed the defendants to receive prompt payment for their respective set prices. (*Id*. at 1371.) Further, with respect to UPMC Presbyterian Shadyside, plaintiffs claim that it is noteworthy that any outstanding amounts were originally paid when simply demanded by UPMC Presbyterian Shadyside, and were only retracted later by the Fund's trustees. (*Id*.) Plaintiffs equate this with the "discretion" that defines a fiduciary relationship.

Finally, plaintiffs oppose the R&R's finding that a broader definition of fiduciary is against public policy, contending that the Court must adopt a broader definition of fiduciary to protect Taft-Hartley funds from hospitals with "nearly immediate access" to funds' assets. (*Id.* at 1372.)

Plaintiffs' argument that UPMC Presbyterian Shadyside and Trinity are fiduciaries to the Fund under ERISA is unavailing. Plaintiffs have failed to allege any facts in the amended complaint to support their assertion that either defendant had discretion or control over the Fund's assets within the meaning of "fiduciary" in ERISA. Plaintiffs allege only in conclusory statements that, "Trinity through its relationship with Multiplan or PHCS exercises authority or control over the assets of the Fund," and, "Trinity is a fiduciary of the Fund's Plans." (Am. Compl. ¶¶ 49–50.)

Likewise, plaintiffs allege only the same conclusory statements that "UPMC [Presbyterian Shadyside] through its relationship with Multiplan or PHCS exercises authority or control over the assets of the Fund," and, "UPMC [Presbyterian Shadyside] is a fiduciary of the Fund's Plans." (Am. Compl. ¶¶ 61–62.) Plaintiffs fail to provide any factual allegations that support their conclusions that UPMC Presbyterian Shadyside and Trinity are fiduciaries of the Fund. That is, plaintiffs fail to allege facts that either of these defendants acted in the capacity of a manager, administrator, or financial advisor to the Fund.

Plaintiffs insist that both defendants had individual discretion or control over the Fund's assets simply because each defendant's "fast pay" arrangement with the Fund allowed the defendants to receive prompt payment for their respective set prices. (Obj. at 1370.) But even if this were true, this type of business arrangement, which addresses the *timing* of payments, does not transform the defendants into fiduciaries of the Fund. In fact, as plaintiffs point out in their objection, the payment terms were negotiated with defendants through third-party network administrators *acting on the Fund's behalf.* Further, plaintiffs allege in their amended complaint that, "Pursuant to ERISA and the contract [with MMS], MMS is obligated [to] review and analyze all medical claims presented to it for payment out of the Fund's assets." (Am. Compl. ¶ 30.) Therefore, taking as true plaintiffs' allegation that there was a "fast pay" arrangement, any such arrangement did not affect *whether* defendants would be paid (which would arguably suggest control of the Fund's assets), but only *when* they would be paid if claims were approved.

Additionally, with regard to UPMC Presbyterian Shadyside, plaintiffs state in their objections that: "All Defendant UPMC Presbyterian Shadyside needed to do was demand an amount, and it received that amount from Fleet." (Obj. at 1371.) Yet, in the amended complaint, plaintiffs state that UPMC Presbyterian Shadyside is owed thousands of dollars from Fleet. (Am.

Compl. ¶ 123.) Contrary to plaintiffs' suggestion in their objection, this specific allegation appears to negate plaintiffs' conclusory allegation that UPMC Presbyterian Shadyside exercised control over management of the Fund's assets. Very simply, plaintiffs have failed to provide *any* factual support in the amended complaint to support their claim that UPMC Presbyterian Shadyside had control of the Fund as a fiduciary within the meaning of ERISA.

Finally, the Court rejects plaintiffs' contention that the Court should expand the definition of fiduciary under ERISA to include UPMC Presbyterian Shadyside and Trinity. As plaintiffs concede, there is no case law that defines third-party health-care providers as fiduciaries under ERISA. (Obj. at 1370.) It is Congress's role to expand the definition of fiduciary within the meaning of ERISA—not the Court's.

For these reasons, plaintiffs' objections to the R&R as they pertain to defendants UPMC Presbyterian Shadyside and Trinity are overruled.

### B. Dismissal of all claims against defendants MMO, MSC and dismissal of state law claims against defendants MMS, UPMC Presbyterian Shadyside, and Trinity

Plaintiffs did not object to the R&R's recommendation of dismissal with respect to all claims against MMO or the state law claims against MMS, UPMC Presbyterian Shadyside, and Trinity. By failing to object to these portions of the R&R, plaintiffs have thereby waived any right to de novo review as well as their right to appeal those matters. *See Thomas v. Arn*, 474 U.S. 140, 147–48, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985) ("[B]y precluding appellate review of any issue not contained in objections, [the court] prevents a litigant from 'sandbagging' the district judge by failing to object and then appealing.").

On independent review, the Court finds no errors with the R&R's findings. As such, all claims against defendants MMO are dismissed as are the state law claims against MMS. Moreover, in addition to the dismissal of the ERISA claims against Trinity and UPMC Presbyterian

Shadyside, discussed above, the state law claims against UPMC Presbyterian Shadyside and Trinity are dismissed as well. Additionally, plaintiffs have voluntarily dismissed all claims against CEMWP and MSC. (Doc. No. 75.) Thus, the only matter left pending in this action is the claim for breach of fiduciary duty under ERISA against MMS.

## IV.      CONCLUSION

For the reasons set forth herein, plaintiffs' objections to the R&R are OVERRULED and the R&R is ACCEPTED with respect to defendant UPMC Presbyterian Shadyside's motion to dismiss (Doc. No. 56) and defendant Trinity's motion to dismiss (Doc. No. 60.) Furthermore, there were no objections to the other motions at issue in the R&R, and, finding no errors on independent review, the Court ACCEPTS the R&R with respect to defendants MMO, MMS, and MSC.

This case will proceed solely with respect to the claim for breach of fiduciary duty under ERISA against MMS.

**IT IS SO ORDERED**.

Dated: September 20, 2018

_____
**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**